UNITED STATES of America

v.

**L. C. VIZENA, d/b/a L. C.'s Place, and Callos Vizena.**

**Civ. A. No. 17186.**

United States District Court,
W. D. Louisiana,
Lake Charles Division.

May 25, 1972.

John J. Roman, Voting and Public Accommodations Section, U. S. Dept. of Justice, Washington, D. C., for plaintiff.

Errol D. Deshotels, Oberlin, La., for defendants.

EDWIN F. HUNTER, Jr., District Judge:

This action was instituted by the United States, pursuant to Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a, et seq., to enjoin racial discrimination in the operation of a place of public accommodation, L. C.'s Place in Oberlin, Louisiana. Plaintiff and defendants, by pre-trial stipulations filed with this Court, have agreed that there

is no genuine issue as to any material fact. The Court having duly considered all pleadings, other papers filed herein, and arguments of counsel, make the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

1. L. C.'s Place is a bar located in Oberlin, Louisiana, owned and operated by L. C. Vizena.

2. Defendant L. C. Vizena leases the premises on which L. C.'s Place is located from Dr. Paul Karam, Oakdale, Louisiana.

3. L. C.'s Place consists of a front room, containing a bar, stools, one table and four chairs, and a side room containing a bar.

4. L. C.'s Place contains a Seeburg juke box, phonograph records, a Fisher billiard pool table and pool equipment, all of which originated outside the state of Louisiana.

5. There are Louisiana amusement licenses, paid for partly by defendant L. C. Vizena, for the above-mentioned juke box and pool table.

6. Defendant L. C. Vizena operates L. C.'s Place on a racially discriminatory basis by maintaining separate entrances to the establishment for Negro and white patrons, separate rooms for the service of Negro and white patrons, and separate restrooms for Negro and white patrons.

7. Defendant Callos Vizena occasionally assists defendant L. C. Vizena in the operation of L. C.'s Place.

8. Defendant Callos Vizena maintains a policy and practice of refusing to Negroes the same service as given to white members of the general public.

9. Unless restrained by the Court the defendants will continue to operate L. C.'s Place on a racially discriminatory basis.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction of this action under 42 U.S.C. § 2000a–6(a) and 28 U.S.C. § 1345.

2. The Attorney General is authorized to institute this action on behalf of the United States pursuant to Section 206(a) of the Civil Rights Act of 1964, 42 U.S.C. § 2000a–5(a).

■■ 3. L. C.'s Place is a place of entertainment within the meaning of Section 201(b) (3) of the Civil Rights Act of 1964, 42 U.S.C. § 2000a(b) (3). The word "entertainment" as used in this subsection was intended to carry its ordinary meaning and, accordingly, the term "place of entertainment" "includes both establishments which present shows, performances and exhibitions to a passive audience and those establishments which provide recreational or other activities for the amusement or enjoyment of its patrons." Miller v. Amusement Enterprises, Inc., 394 F.2d 342, 350–351 (5th Cir., 1968) (en banc); Evans v. Seaman, d/t/a Les's Roller Rink aka Leo's Roller Rink, 452 F.2d 749 (5th Cir., 1971); Evans v. Laurel Links, Inc., 261 F.Supp. 474 (E.D.Va. 1966). Section 201(b) (3) should not be restricted to the "primary objects of Congress' concern when a natural reading of its language would call for broader coverage." Daniel v. Paul, 395 U.S. 298, 307, 89 S.Ct. 1697, 1702, 23 L.Ed.2d 318 (1969). Therefore, following the standards set by the courts in *Daniel* and *Miller,* this Court, in determining whether an establishment is a "place of entertainment" within the meaning of Section 201(b) (3) of the Civil Rights Act of 1964, need look only to the activities of the patrons of the establishment and the facilities provided by the establishment to enable the patrons to engage in those activities. L. C.'s Place provides a juke box and pool table for the entertainment and amusement of its patrons; it is therefore a "place of entertainment" within the meaning of the Act.

■ 4. The operations and activities of L. C.'s Place affect commerce within the meaning of Section 201(c) (3) of the Civil Rights Act of 1964, 42 U.S.C. § 2000a(c) (3). *Miller,* supra; *Daniel,*

supra. Defendants have stipulated that the amusement devices provided by L. C.'s Place all have originated outside the State of Louisiana. It is clear that mechanical sources of entertainment were "considered by Congress to be 'sources of entertainment' within the meaning of § 201(c) (3)." *Daniel,* supra, 395 U.S. at 308, 89 S.Ct. at 1702. A "source of entertainment" moves in commerce within the meaning of Section 201(c) (3) if it originates in a state other than the one where it is being presented. See Twitty v. Vogue Theatre Corp., 242 F. Supp. 281 (M.D.Fla., 1965); United States v. Johnson Lake, Inc., 312 F. Supp. 1376 (S.D.Ala.1970); Evans v. Seaman, supra; *Miller,* supra. The amusement devices contained within L. C.'s Place are sufficient vehicles to furnish the interstate commerce connection required by Section 201(c) (3).

■ 5. The foregoing conclusions are bolstered by the holdings of the Supreme Court of the United States that the Civil Rights Act is to be afforded a liberal construction in order to carry out the purpose of Congress to eliminate the inconvenience, unfairness and humiliation of racial discrimination. Hamm v. Rock Hill, 379 U.S. 306, 85 S.Ct. 384, 13 L.Ed.2d 300 (1964); Daniel v. Paul, supra.

■ 6. The acts and practices of defendants, in refusing to provide Negroes the same service as is provided white members of the general public and maintaining dual facilities for the service of Negro and white patrons, are in violation of Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a et seq.

■ 7. This Court has not merely the power but the duty to render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future. Louisiana v. United States, 380 U.S. 145, 154, 85 S.Ct. 817, 13 L. Ed.2d 709 (1965); United States v. Beach Associates, Inc., 286 F.Supp. 801 (D.C.Md., 1968).

Rendering an appropriate decree is a delicate task. Necessarily we must consider the humiliation and unfairness to the Negroes resulting from dual service, but at the same time we must render a practical decree, one which will deal with the realities of the situation. Not wishing to emulate Don Quixote we have altered the Justice Department's proposed decree. In their zeal they would have provided for, first, the posting of notices at the entrance customarily used by Negroes and at the main entrance; second, the permanent locking of the entrance customarily used by Negroes; and third, the removal of the dividing wall between the front and side bar areas.

The situation does not demand so stern a solution. Coverage under the law was not crystal clear. Reasonable men differed. This being the case, we should not punish those who interpreted the coverage less extensively.

Convictions are deeply held. We must tread carefully or the results will be retrogressive in the area of race relations. The old adage that one must be careful not to cut off one's nose to spite one's face is apropos. Flaunting victory in the loser's face does nothing but embitter feelings. We seek to lessen the tensions between Negroes and whites: to bring equal treatment for all so that man interacts with other men on a basis of individual choice, not the artificial basis of race.

The suggested Justice Department decree attacks a windmill, causing deeper resentment. We assume that once this court issues an order making it clear that certain acts are prohibited by laws of this country, then those laws will be obeyed and the acts will cease. No signs, locking of doors, or destruction of walls is necessary until such time as evidence is introduced that the order has been ignored.

## DECREE

Pursuant to the foregoing Findings of Fact and Conclusions of Law, it is here-

**556**

by ordered that the defendants, their agents, employees, successors, and all persons in active concert or participation with them, are hereby enjoined from engaging in any acts or practices which directly or indirectly deprive any person of the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of L. C.'s Place without discrimination on the grounds of race or color.