Henry WESTRAY, Jr., et al., Plaintiffs,

v.

The PORTHOLE, INC., et al., Defendants.

Henry WESTRAY, Jr., et al., Plaintiffs,

v.

The OFFICE DISCO, INC., et al., Defendants.

Civ. A. Nos. R–84–433, R–84–434.

United States District Court, D. Maryland.

May 22, 1984.

Donald Jones, Singleton, Dashiell & Robinson, P.A., Baltimore, Md., for plaintiffs.

Nathan Braverman, Garbis & Schwait, P.A., Baltimore, Md., for defendants.

## MEMORANDUM AND ORDER

RAMSEY, District Judge.

Currently before the Court are the defendants' motions to dismiss in the above-captioned cases. The plaintiffs have filed memoranda in opposition. The motions will be considered together because the com-

plaints in each case are substantially similar, and the motions and memoranda are identical. The Court now rules pursuant to Local Rule 6(E) without the need for oral argument.

These actions were brought under 42 U.S.C. § 2000a *et seq.,* 42 U.S.C. § 1981, the Thirteenth Amendment, and Article 49B, § 5 of the Maryland Annotated Code "seeking to redress deprivation of rights of blacks to equal access to public accomodation and the rights of whites whose rights of association are infringed upon by [this] discriminatory exclusion ...." The plaintiffs are five blacks and seven whites who complain that on numerous occasions when they visited the "Porthole" bar and "The Torch" bar the whites were permitted to enter, but the blacks were barred when they were unable to produce three, or sometimes four or five, forms of identification. The defendants in each are the incorporated owners of the bars and their licensees, and in R–83–434 also include the unnamed doormen.

■ In the motions to dismiss, the defendants challenge the sufficiency of each of the plaintiffs' four counts under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The grant of a motion to dismiss pursuant to Rule 12(b)(6) is appropriate only when "it appears beyond doubt that plaintiff[s] can prove no set of facts in support of [their] claims which would entitle [them] to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). In ruling upon the pending motion to dismiss, this Court must view the complaint in the light most favorable to plaintiffs and resolve every doubt in his behalf. *See* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1357 (1969). The plaintiffs' allegations are to be taken as true for the purposes of ruling upon the pending motion. *See id.; see also Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *Jenkins v. McKeithen,* 395 U.S. 411, 421–22, 89 S.Ct.

1843, 1848–49, 23 L.Ed.2d 404 (1969). Moreover, any inference that may reasonably be drawn or construed from plaintiffs' complaint shall be considered together with the allegations of fact. *Murray v. City of Milford,* 380 F.2d 468, 470 (2d Cir.1967); *L.S. Good & Co. v. H. Daroff & Sons, Inc.,* 263 F.Supp. 635, 644 (N.D.W.Va.1967). In addition, dismissal of a civil rights action on motion should be sparingly practiced.

I. *Count I: Standing of the White Plaintiffs under Section 1981 to Assert Rights of Association.*

■ The Court dismisses Count I of the complaint with respect to the seven white plaintiffs.[1] A plaintiff who alleges interference with his "rights of association," but not with one of the rights listed in the statute does not state a claim for relief under 42 U.S.C. § 1981. *See Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Although the white plaintiffs might have enjoyed the company of their black friends who allegedly were denied admittance to the "Torch" and the "Porthole," they have endured no injury that is cognizable under this section of the civil rights statutes.

The Court first notes that although the parties have argued in terms of standing this issue can be analyzed as to whether the white plaintiffs have stated a claim for relief under 42 U.S.C. § 1981. "Whether the answer is labeled 'standing' or 'cause of action,' the question is whether the statute or constitution authorizes the plaintiff to sue." Currie, *Misunderstanding Standing,* 1981 Sup.Ct.Rev. 41, 43. The defendants do not raise traditional standing issues: they do not argue that the plaintiffs' alleged injuries are to attenuated or indirect, *see Warth v. Seldin,* 422 U.S. 490, 498–502, 95 S.Ct. 2197, 2204–2207, 45 L.Ed.2d 343 (1975) (discussing standing cases), that they have failed to satisfy the "case or controversy" requirement of Article III. Instead, their motion is directed at

---

**1.** The seven white plaintiffs include: Charles Holmes, Matthew M. DeRonville, Rovan Wernsdorfer, Robert S. Clark, and Lee Hoschall in both cases, Thomas Wright in R–84–433, and Frederick K. Lamp in R–84–434.

the scope of section 1981. The Court, therefore, need not address the constitutional and prudential limitations of standing other than those necessarily involved in the interpretation of this statute.

■ The white plaintiffs have not shown that the "statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff[s'] position a right to judicial relief." *Id.* at 500, 95 S.Ct. at 2206. As discussed in *Warth*, "[t]he actual or threatened injury required by Article III may exist solely by virtue of 'statutes creating legal rights, the invation of which creates standing ....' " *Id.* In their memorandum, the plaintiffs attempt to convince the Court that what may hold true for other civil rights statutes holds true for section 1981. A civil remedy under this section, however, is separate and independent of other civil rights remedies such as section 1983, which pertains to the deprivation of rights under the color of state law, or the public accommodations provisions of 42 U.S.C. § 2000a *et seq.*

Although it is now clear that whites may avail themselves of section 1981, *see McDonald v. Santa Fe Trail Transportation Co.,* 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976); *Fiedler v. Marumsco Christian School,* 631 F.2d 1144, 1149–50 (4th Cir.1980), this section only protects certain enumerated rights:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence and to full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981. As noted by the defendants, section 1981 can be divided roughly into three parts: the contracts clause, the equal benefit clause, and the like punishment clause. *See Mahone v. Waddle,* 564 F.2d 1018 (3d Cir.1977), *cert. denied,* 438 U.S. 904, 98 S.Ct. 3122, 57 L.Ed.2d 1147 (1978); *Vietnamese Fishermen's Association v. Knights of the Ku Klux Klan,* 518 F.Supp. 993, 1008 (S.D.Tex.1981). "[T]o state a claim under § 1981, a plaintiff must prove a deprivation of one of the enumerated rights which, under similar circumstances, would have been accorded to a person of a different race and also that such deprivation was intentional and motivated by racial prejudice." *Robertson v. Maryland State Department of Personnel,* 481 F.Supp. 108, 112 (D.Md.1978).

The white plaintiffs claim only that the defendants violated their rights of association with persons who had been discriminated against. They do not allege the violation of any of their rights that are listed in section 1981.[2] They neither attempt to assert the rights of blacks who were discriminated against, *see East v. Texas Motor Freight System, Inc. v. Rodriquez,* 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977); *Chavez v. Tempe Union High School District,* 565 F.2d 1087 (9th Cir. 1977); *Wisconsin NOW v. Wisconsin,* 417 F.Supp. 978 (W.D.Wis.1976), nor allege discrimination against themselves, *see Valle v. Stengel,* 176 F.2d 697 (3d Cir.1949) (whites refused admittance to swimming pool because they were accompanied by blacks). The majority of the cases relief upon by the plaintiffs are easily distinguishable from the present situation: their inability to enjoy the company of their friends in the defendants' bars is unlike the interference with a white plaintiff's contract rights because of his association with a black, *see e.g., Sullivan v. Little Hunting Park,* 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969); *Runyon v. McCrary,* 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976); *DesVergnes v. Seekonk Water District,* 601 F.2d 9 (1st Cir.1979); *DeMatteis v. Eastman Kodak Co.,* 511 F.2d 306, *mod-*

---

**2.** The white plaintiffs' failure to allege that their rights under the contract clause, the equal benefit clause, or the like punishment clause were violated makes it unnecessary to decide whether the latter two clauses require an allegation of state action. *See Robertson, supra,* at 111; *Vietnamese Fishermen's Assoc. v. Knights of the Ku Klux Klan,* 518 F.Supp. 993 (S.D.Tex.1981).

*ified,* 520 F.2d 409 (2d Cir.1975); *Walker v. Pointer,* 304 F.Supp. 56 (N.D.Tex.1969). Language in these cases concerning "associational rights" should not be taken out of context. In *DeMatteis, supra,* when the plaintiff alleged that he lost his job because of his association with blacks, he stated a claim under section 1981 because the defendant interfered with his contract rights, not his rights of association. Even if one labels such injuries as "derivative to discrimination aimed at blacks," *National Organization for Women v. Sperry Rand Corp.,* 457 F.Supp. 1338, 1346 (D.Conn. 1978),[3] section 1981 provides a claim for relief to such a white person not because of the illegal discrimination against a black person but because his own rights under the section have been impinged.[4]

The holding in *Trafficante v. Metropolitan Life Insurance Co.,* 409 U.S. 205, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972), that 42 U.S.C. § 3610(a) protects whites against injury from the loss of interracial social association in the area of equal housing opportunity—a holding upon which the plaintiffs rely heavily—is not persuasive when considering standing under section 1981.[5] *Trafficante,* which was based upon the legislative history of the 1968 Civil Rights Act and the broad language of the section in question, does not control with respect to questions of standing under section 1981 and 1982. *Warth v. Seldin, supra,* at 512–14, 95 S.Ct. at 2212–13; *see also Gladstone*

*Realtors v. Village of Bellwood,* 441 U.S. 91, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979). The sections, and the rights created under them, are distinguishable.

The Court disagrees with the holding in *National Organization for Women v. Sperry Rand Corp.,* 457 F.Supp. 1338 (D.Conn.1978)—apparently the only case precisely on point with the issue at hand [6]—that section 1981 protects rights of association without regard to the rights that are enumerated in the section. This Court would not hold, as in *Sperry Rand,* that a white employee had standing to sue under section 1981 for her rights to associate with blacks at her place of employment who allegedly had been the object of her employer's discrimination. *See id.* at 1345–47. The *Sperry Rand* court did not address *Warth, supra,* incorrectly applied *Trafficante, supra,* and relied improperly on cases such as *DeMatteis, supra,* which involved the violation of enumerated rights, not rights of association. *See* Note, *Standing Under 42 U.S.C. §§ 1981 and 1982: Direct, Indirect, and a New "Loss of Association" Standing,* 13 Conn.L.Rev. 87, 137–39 (1980) (discussing the *Sperry Rand* decision.)[7]

## II. *Count II: Independent Cause of Action Under the Thirteenth Amendment.*

■ The defendants are correct that the Thirteenth Amendment does not give rise

---

3. *See infra* page 838 for a discussion of this case.

4. To the extent that *Barrows v. Jackson,* 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953), *Sullivan v. Little Hunting Park,* 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969) (§ 1982), and other cases allow this Court to expand the bounds of standing under 42 U.S.C. § 1981 to allow "the only effective adversary" to sue, this Court concludes that the white plaintiffs are not necessary under section 1981 to combat the discrimination alleged in these complaints. "[O]rdinarily, one may not claim standing ... to vindicate the constitutional rights of some third party." *Barrows, supra* at 255, 73 S.Ct. at 1034. This rule holds true here. The presence of the black plaintiffs in these cases belies any contention that a white plaintiff would be "the only effective adversary."

5. In *Trafficante,* the Supreme Court found it "unnecessary to reach the question of standing to sue under 42 U.S.C. § 1982 ...." *Id.* at 209 n. 8, 93 S.Ct. at 367.

6. *Ripp v. Dobbs Houses, Inc.,* 366 F.Supp. 205, 211 (N.D.Ala.1973), also examined this issue, but the *Ripp* court's refusal to hear the plaintiff's "freedom of association claims" was based upon the belief, now discredited, *see McDonald, supra,* that section 1981 was inapplicable to whites.

7. The student author concluded that "[s]ince the plaintiff did not allege any interference with her own right to contract, the *N.O.W.* court's grant of standing was unwarranted." *Id.* at 139.

to an independent cause of action. *See Lopez v. Sears, Roebuck and Co.,* 493 F.Supp. 801, 806–07 (D.Md.1981); *Vietnamese Fishermen's Assoc. v. Knights of the Ku Klux Klan,* 518 F.Supp. 993, 1012 (S.D.Tex.1981); *Clark v. Universal Builders, Inc.,* 409 F.Supp. 1274, 1279 (N.D.Ill. 1976). The plaintiffs instead must avail themselves of the remedies, such as 42 U.S.C. § 1981, that Congress has created under the power granted to it in that amendment. "[T]hese statutes define the scope of the cause of action; one cannot try for broader scope by suing under the Thirteenth Amendment itself." *Vietnamese Fishermen's Assoc., supra* at 1012. *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), and *Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), which recognized direct causes of action under the Fourth and Fifth Amendments respectively, and upon which the plaintiffs rely, arose out of different considerations. Accordingly, Count II of the complaints in both cases shall be dismissed.

### III. *Count III.*

#### A. *"Place of Entertainment" Under 42 U.S.C. § 2000a(b)(3).*

■ At least for the purposes of this motion, both of the defendants' bars are "places of entertainment" under 42 U.S.C. § 2000a(b)(3), and, therefore, are subject to the strictures of the public accommodations provisions of the Civil Rights Act of 1964. The plaintiffs' allegations that the defendants establishments are a "bar" and a "night club," respectively, satisfies the pleading requirements under Rules 8(a) and 12(b)(6) of the Federal Rules of Civil Procedure and 42 U.S.C. § 1981. *See United States v. Deyorio,* 473 F.2d 1041, 1042 (5th Cir.1973); (per curiam) (bar and package store); *United States v. DeRosier,* 473

F.2d 749, 751–52 (5th Cir.1973); *United States v. Deetjan,* 356 F.Supp. 688 (D.Fla. 1973).

#### B. *Standing of White Plaintiffs Under Section 2000a to Assert Rights of Association.*

■ The Court dismisses Count III of the complaint with respect to the seven white plaintiffs.[8] The white plaintiffs have not stated a claim for relief under 42 U.S.C. § 2000a *et seq.* In other words, *see* Currie, *Misunderstanding Standing,* 1981 Sup.Ct. Rev. 41, they do not have standing under this section for the alleged injuries. *See Warth v. Seldin,* 422 U.S. 490, 500, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). Their "rights of association" in public accomodations are not protected by Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a *et seq.*

The protections under this title do not include "rights of association" except with respect to segregation:

All persons shall be entitled to full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accomodations of any place of public accomodation ..., without discrimination on the ground of race, color, religion, or national origin.

42 U.S.C. § 2000a(a). In their memorandum, the plaintiffs do not address how this section protects the seven white plaintiffs.

The only argument that the Court can construct to support the plaintiffs' position—that the admittance of whites when accompanied with the refusal to admit the blacks constitutes "segregation"—is not supported by the title's case law or legislative history. No case can be found that has permitted anyone to sue to protect their "rights of association."[9] The legislative history behind Title II of the Civil Rights Act of 1964, and the proposed bills

---

8. The dismissal of Counts I and III with respect to the seven white plaintiffs and of Counts II and IV in their entirety leaves only the five black plaintiffs in these cases.

9. Cases on "standing," or on who is entitled to sue under Title II of the Civil Rights Act of 1964, are rare and do not address the issue at hand. *See, e.g., United States v. Vizena,* 342 F.Supp. 553, 555 (W.D.La.1972) (blacks deserve the same service as is provided whites).

that preceded it, strongly contradict the plaintiff's position. Senate Report No. 872 which accompanied S. 1732 (the Senate's version of the house bill, H.R. 914, that eventually became law and does not vary in who is entitled to sue) stated that

[t]he bill would guarantee all persons freedom from a refusal by an included establishment or organization to deal with them on account of race, color, or national origin. Any person refused service by a public establishment on the above-mentioned grounds would have the right to seek a court order against the offending establishment or individual . . . .

1964 U.S.Code Cong. & Admin.News, 2355, at 2356. (S.Rep. No. 872). Although the final version of Title II differed from the proposed Senate bill, it did not materially differ with respect to who could sue. *See also* 1964 U.S.Code Cong. & Admin.News, at 2493–2500; 110 Cong.Rec. 7383–85, 7404–05.

Accordingly, Count III is dismissed with respect to the white plaintiffs.

IV. *Count IV: Private Cause of Action Under Article 49B § 5 of the Annotated Code of Maryland.*

■ As apparently conceded by the plaintiffs in their memorandum in opposition, Article 49B, § 5 of the Annotated Code of Maryland does not expressly or impliedly permit private causes of action, but instead charges the Maryland Commission on Human Relations with certain powers and responsibilities. *See Dillon v. The Great Atlantic & Pacific Tea Co., Inc.*, 43 Md.App. 161, 403 A.2d 406 (1979) (discrimination in employment, not public accomodations). "If the statute does not authorize a particular form of relief, and the common law recognizes no such cause of action, that form of relief is not available." *Id.* at 166, 403 A.2d at 409. Accordingly, Count IV of each complaint is dismissed.

For the reasons stated herein, it is this 22nd day of May, 1984, by the United States District Court for the District of Maryland,

ORDERED:

1. That the defendants motion to dismiss in R–84–433 and in R–84–434 is GRANTED IN PART and DENIED IN PART;

2. That Count I of R–84–433 and of R–84–434 is DISMISSED with respect to the six white plaintiffs;

3. That Count II of R–84–433 and of R–84–434 is DISMISSED;

4. That Count III of R–84–433 and of R–84–434 is DISMISSED with respect to the six white plaintiffs;

5. That Count IV of R–84–433 and of R–84–434 is DISMISSED;

6. That the action is DISMISSED in R–84–433 with respect to plaintiffs Holmes, Wright, DeRonville, Wernsdorfer, Clark, and Hoschall, and in R–84–434 with respect to plaintiffs Holmes, Lamp, DeRonville, Wernsdorfer, Clark and Hoschall;

7. That the plaintiffs may amend the complaint in R–83–434 with respect to the unnamed defendant doormen on or before June 11, 1984.