Jane DOE, Plaintiff,

v.

Noel P. KEANE, individually and d/b/a Infertility Center of New York; Noel P. Keane, P.C.; Philip J. Parker, M.D.: Michael I. Berke, M.D., P.C.; Michael I. Berke, M.D.; and Ronald G. Zack, M.D.; Michael H. Gotlib, M.D.; Michael H. Gotlib, M.D., P.C.,; Abraham Blumer, M.D., Defendants.

No. G86–868 CA5.

United States District Court, W.D. Michigan, S.D.

April 15, 1987.

Bean & Bean, P.C. by Wiley E. Bean, Grand Ledge, Mich., for plaintiff.

Kitch, Saurbier, Drutchas, Wagner & Kenney, P.C. by Ralph Valitutti, Detroit, Mich., for defendant Dr. Philip Parker.

Law Offices of Melvin Schwart by Melvin Schwartz, Southfield, Mich., for defendant Abraham Blumer, M.D.

Simon, Jarema & Associates by Dennis Simon, Southfield, Mich., for defendants Blumer and Gotlib.

Miller, Canfield, Paddock & Stone by Linda O. Goldberg, Ann Arbor, Mich., for defendants Noel P. Keane, Noel P. Keane, P.C. and Noel P. Keane, d/b Infertility Center of New York.

Law Offices of Melvin R. Schwartz by Melvin R. Schwartz, Southfiled, Mich., for defendant Ronald G. Zack, M.D.

Plunket, Cooney, Rutt, Watters, Stanczyk & Pedersen by D.J. Watters, Detroit, Mich., for defendant Michael I. Berke, M.D., P. and Michael Berke, M.D.

Sullivan, Ward, Bone, Tyler, Fiott & Asher, P.C. by Richard A. Bone, Detroit, Mich., co-counsel for defendant Abraham Blumer.

## OPINION GRANTING MOTIONS TO DISMISS AND SUMMARY JUDGMENT

HILLMAN, Chief Judge.

Currently before the court are four motions submitted by defendants. They include motions to change venue, to dismiss, and to compel answers to interrogatories. Argument was heard on March 26, 1987. This is the official opinion filed in accordance with the decision rendered from the bench.

### I. Statement of Facts

This cause of action arises out of a "surrogate parenting agreement" entered into by plaintiff, Jane Doe, and a married man, identified for the purpose of this action as Michael. That agreement was entered into on June 4, 1985.

On approximately January 16, 1985, plaintiff telephoned the offices of defendant Noel Keane, a Michigan attorney whose practice includes facilitation of surrogate parenting arrangements. Plaintiff inquired into the possibility that she might participate in such an arrangement as a surrogate mother. On January 19, 1985, plaintiff visited defendant Keane's office where she was introduced to Michael and his wife, a couple from Connecticut desiring the services of a surrogate mother. Sometime before the end of January, plaintiff alleges that she received a telephone call from Michael's wife who attempted to persuade plaintiff to become a surrogate mother. On January 31, 1985, plaintiff notified defendant Keane that she "would probably" participate in the program. Plaintiff was sent a surrogate parenting agreement in February. However, she did not sign the agreement until June. There

is some indication that during the ensuing period, plaintiff conferred with an attorney who may have been considering the legal and moral implications of her participation in the program.

In March of 1985, plaintiff visited the offices of defendant Parker, a doctor who was to evaluate plaintiff's psychological fitness to become a surrogate mother. During the next six months plaintiff was artificially inseminated a number of times by defendants Berke, Blumer, Gotlib, and Zack, all of whom are medical doctors working with defendant Keane. In July, following an unsuccessful insemination, plaintiff went to Lansing General Hospital with a swollen uterus. Plaintiff ultimately became pregnant subsequent to an insemination performed in September of 1985. Her child was born prematurely in February, 1986, and died immediately afterwards.

Pursuant to the terms of the parenting agreement, plaintiff was entitled to $10,-000.00 if she carried the child to term. She was to receive $1,000.00 if she miscarried in her fifth, sixth, or seventh month of pregnancy. Following the premature birth of her child and the child's death, plaintiff called defendant Keane seeking payment of $10,000.00. After some negotiation, defendant Keane and plaintiff agreed that plaintiff would receive $7,000.00 in return for signing a document releasing defendants from all potential claims. The document was signed and the money paid.

Plaintiff alleges a variety of malpractice and negligence claims based on the way the arrangements were handled by defendant Keane and the way the psychological examination and inseminations were conducted by the other defendants. In addition, plaintiff alleges that defendants' acts violated the Thirteenth and Fourteenth Amendments, and 42 U.S.C. § 1983. It is on these latter allegations that federal jurisdiction under 28 U.S.C. § 1331 is premised.

### II. Discussion

#### A. Motion to Change Venue

First I shall address the motion of defendants Zack and Blumer to transfer venue to the Eastern District of Michigan.

Title 28 of the United States Code, Section 1391 provides that in a civil suit in which jurisdiction is not based on diversity, venue shall be had in the judicial district where all the defendants reside or where the claim arose. Although unequivocal on its face, federal courts, including the United States Supreme Court, maintain considerable flexibility in the application of this statute. In *Denver & R.G.W.R. Co. v. Brotherhood of R.R. Trainmen, Col.,* the Supreme Court set forth the general proposition that venue in federal courts is primarily a matter of the convenience of the litigants and the witnesses. 387 U.S. 556, 87 S.Ct. 1746, 18 L.Ed.2d 954 (1967). A balancing of the interests of all the parties concerned is required and, in the absence of unusual circumstances, courts will not exercise their power to disturb a party's choice of forum. *See, Florida Nursing Home Ass'n v. Page,* 616 F.2d 1355 (5th Cir.1980), *cert. denied,* 449 U.S. 872, 101 S.Ct. 211, 66 L.Ed.2d 92 (1980), *rev'd on other grounds,* 450 U.S. 147, 101 S.Ct. 1032, 67 L.Ed.2d 132 (1981).

After a careful review of the facts, people, and allegations involved in this suit, I have concluded that such unusual circumstances are not present here. First, the plaintiff has at all times relevant to this case resided in the Western District of Michigan. Witnesses that she would call also reside here, and the hospital where she was treated for alleged injuries resulting from defendants' acts is in this district. Second, and perhaps more importantly, only two of the six defendants have requested a transfer to the Eastern District. In a multi-defendant action, a request for transfer coming from only a fraction of the named defendants is somehow not too compelling. Finally, I do not believe that at this point in time a change of venue would serve the interests of either plaintiff or defendants. A transfer of this case from the docket of this court to the docket of a court in the Eastern District would only delay resolution of the parties' claims.

Therefore, the motion of defendants Zack and Blumer is denied.

**B. Motions to Dismiss**

Defendant Keane moves for dismissal and summary judgment on the ground that plaintiff has failed to state a claim on which relief can be granted. Fed.R.Civ.P. 12(b)(6) and 56. Defendant Parker also moves for dismissal for failure to state a claim and, in addition, seeks dismissal on the ground that the court lacks jurisdiction over the subject matter of this suit. Fed.R.Civ.P. 12(b)(1). Defendants Zack and Blumer join the motions of defendants Keane and Parker. Defendants Gotlib and Berke filed a motion "concurring" in the motion of defendant Parker. Although defendant Keane and defendant Parker proffer slightly different arguments in support of their 12(b)(6) motions, they are in essence nearly identical. Therefore, I shall address them as one.

Suits alleging jurisdiction on the basis of 28 U.S.C. § 1331 will rarely be dismissed under Rule 12(b)(1). A federal claim should be dismissed for lack of subject matter jurisdiction only when it is clearly immaterial and brought only for the purpose of obtaining jurisdiction. *Bell v. Hood,* 327 U.S. 678, 682–83, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946). Not being convinced that such is the case here, I decline to dismiss this suit on the basis of defendant Parker's Rule 12(b)(1) motion.

The purpose of a Rule 12(b)(6) motion is to test the formal sufficiency of the complaint to state a redressable claim. When matters outside the pleadings are presented to and considered by the court, as in this case, a Rule 12(b)(6) motion will be treated as a motion for summary judgment under Rule 56.

On a motion for summary judgment under Rule 56, the movant bears the burden of proving conclusively that there is no genuine issue of material fact and that the movant is entitled to summary judgment as a matter of law. *Smith v. Hudson,* 600 F.2d 60 (6th Cir.1979); *Tee-Pak, Inc. v. St. Regis Paper Co.,* 491 F.2d 1193 (6th Cir. 1974); Fed.R.Civ.P. 56(a). The court is obligated to consider all pleadings, depositions, answers to interrogatories, and ad-

missions on file, in addition to the material specifically offered in support of the motion. *Smith, supra,* at 64. In determining whether there are issues of fact requiring trial, "the inferences to be drawn from the underlying facts contained in the [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). A court may not resolve disputed questions of fact in a summary judgment decision and if a disputed question of fact remains, the motion should be denied, and the case should proceed to trial. *United States v. Articles of Device,* 527 F.2d 1008, 1011 (6th Cir.1976).

Plaintiff's federal claims are based on alleged violations of the Thirteenth and Fourteenth Amendments and 42 U.S.C. § 1983. With respect to each of these alleged violations, plaintiff has failed to state a claim on which relief can be granted. Furthermore, on the basis of the exhibits and affidavits that both parties have submitted, I am satisfied that there is no genuine issue of material fact as to whether plaintiff could prove any set of facts on which a federal claim based on these allegations could be sustained.

### 1. Thirteenth Amendment

█Plaintiff's allegations of a Thirteenth Amendment violation are perhaps the most quickly dispensed with. The parties have made arguments both for and against a finding of slavery with respect to the surrogate mother and the child she bears. Those arguments are based on an analysis of whether a surrogate parenting agreement involves the transfer of custody or property rights, and whether a surrogate mother who carries a fetus to term does so as a result of biological coercion or the coercion of another person. Interesting as these arguments may be, they are irrelevant in this case as it is well established that the Thirteenth Amendment does not allow for independent, private causes of action. *See, e.g., Turner v. Unification Church,* 473 F.Supp. 367, 373–74 (D.R.I. 1978), *aff'd,* 602 F.2d 458 (1st Cir.1979);

*Sanders v. A.J. Canfield Co.,* 635 F.Supp. 85, 87 (N.D.Ill.1986); *Westray v. Porthole, Inc.,* 586 F.Supp. 834, 838–39 (D.Md.1984). Plaintiff, as a matter of law, is in no position to raise a Thirteenth Amendment claim.

### 2. Fourteenth Amendment

█ Just as plaintiff is not a proper individual to raise a Thirteenth Amendment claim, the defendants are not proper individuals against whom to bring a Fourteenth Amendment claim. The Fourteenth Amendment does not reach private conduct. *Rendell-Baker v. Kohn,* 457 U.S. 830, 837, 102 S.Ct. 2764, 2769, 73 L.Ed.2d 418 (1982). *Lugar v. Edmondson Oil Co.* succinctly sets forth the requirements for finding that a person violated the Fourteenth Amendment. It states:

> [T]he party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State. Without a limit such as this, private parties could face constitutional litigation whenever they seek to rely on some state rules governing their interactions with the community surrounding them.

457 U.S. 922, 937, 102 S.Ct. 2744, 2754, 73 L.Ed.2d 482 (1982).

In her complaint plaintiff fails to allege any participation by the state or state actors in the events leading up to this suit. Only private individuals are involved. No state officials or officers are even identified by plaintiff as having been involved in the events or transactions at issue.

█ Furthermore, plaintiff's contention, contained in one of her briefs, that the refusal or failure of the State of Michigan to prohibit surrogate parenting transforms defendants' conduct into action taken under color of state law, is entirely unpersuasive. Controlling law is clear that exercise of a choice allowed by state law, where the initiative comes from a private actor and

not from the state, cannot make a private act a state act for purposes of the Fourteenth Amendment. *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 357, 95 S.Ct. 449, 456, 42 L.Ed.2d 477 (1974); *Davis v. Richmond*, 512 F.2d 201, 204 (1st Cir.1975).

### 3. Section 1983

 Plaintiff's claims under 42 U.S.C. § 1983 must similarly fail for failure to allege state action. In pleading a section 1983 claim, plaintiff must allege that defendant acted "under color of any statute, ordinance, regulation, custom or usage, of any State or Territory." *Adickes v. Kress & Co.*, 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970). This requirement demands that courts ascertain whether "the alleged infringement of federal rights [is] 'fairly attributable to the State.'" *Rendell-Baker, supra*, 457 U.S. at 838, 102 S.Ct. at 2770. Plaintiff does not explicitly or implicitly allege facts from which the inference could properly be drawn that defendants acted under color of state law. Her claims are based on purely private conduct.

### 4. 42 U.S.C. § 1981 and 42 U.S.C. § 1985

The only federal claims that plaintiff alleges in her complaint involve violations of the Thirteenth and Fourteenth Amendments and 42 U.S.C. § 1983. Without amending that complaint, she cannot properly argue violations under other federal law. However, in view of the fact that she discussed claims under 42 U.S.C. §§ 1981 and 1985 in one of her briefs in opposition, I will briefly address her alleged causes of action under these statutes.

 Section 1981 has been held to apply only to alleged discrimination of the basis of race or alienage. *See, Runyon v. McCrary*, 427 U.S. 160, 167, 96 S.Ct. 2586, 2592, 49 L.Ed.2d 415 (1976). Since plaintiff nowhere suggests that race or alienage were in any way involved in any of the events leading up to her suit, she cannot allege a violation of this statute.

 Plaintiff likewise fails to allege any facts which would allow her to base her cause of action on Section 1985. (I am assuming that when plaintiff refers to Section 1985, she means Section 1985(3), Conspiring to Deprive Persons of Their Rights or Privileges, as it is the only portion of that provision that could conceivably apply here.) To allege a cause of action under Section 1985(3) plaintiff must allege a conspiracy and "some racial or other class-based, invidiously discriminatory animus behind the conspirators' actions." *United Brotherhood of Carpenters & Joiners v. Scott*, 463 U.S. 825, 834, 103 S.Ct. 3352, 3359, 77 L.Ed.2d 1049 (1983), *citing, Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971); *Dunn v. Tennessee*, 697 F.2d 121, 124 (6th Cir.1982), *cert. denied*, 460 U.S. 1086, 103 S.Ct. 1778, 76 L.Ed.2d 349 (1983). Classes protected by Section 1983(3) are no broader than those "'discrete and insular' minorities that receive special protection under the Equal Protection Clause because of inherent personal characteristics." *Nat'l Comm. Systems, Inc. v. Mich. Public Service Comm.*, 789 F.2d 370, 374 (6th Cir.), *cert. denied*, —— U.S. ——, 107 S.Ct. 182, 93 L.Ed.2d 117 (1986). Section 1983(3) claims cannot be based on animus against political classes, economic views or activities, or physical handicaps. *United Brotherhood of Carpenters, supra*, at 838, 103 S.Ct. at 3361; *Schultz v. Sundberg*, 759 F.2d 714, 718 (9th Cir.1985); *D'Amato v. Wisconsin Gas Co.*, 760 F.2d 1474 (7th Cir.1985); *Wilhelm v. Continental Title Co.*, 720 F.2d 1173 (10th Cir.1983), *cert. denied*, 465 U.S. 1103, 104 S.Ct. 1601, 80 L.Ed.2d 131 (1984). Inclusion in the class must be a result of inherent characteristics. The class cannot be defined solely by action taken by the parties. *Rodgers v. Lincoln Towing Service, Inc.*, 771 F.2d 194, 202–03 (7th Cir.1985).

 The "clearly defined class" of "surrogate mothers" of which plaintiff contends she is a member, is not a class defined by inherent characteristics. It is, in fact, a class exclusively defined by the conduct of the parties entering into surrogate parenting agreements. When an individual's status as a member of a class depends on the defendants' actions, it is impossible to prove that the defendants acted out of a

class-based, discriminatory animus. Individuals cannot conspire to discriminate against a class that does not exist except by virtue of the alleged discriminatory acts. *Askew v. Bloemker*, 548 F.2d 673, 678 (7th Cir.1976). There is no way that plaintiff could successfully allege a Section 1985(3) claim even if she were to properly amend her complaint.

For the reasons stated above, I am satisfied that plaintiff has failed to allege a federal claim on which relief can be granted. Furthermore, I am convinced that no issues of material fact exist as to whether she could prove any set of facts on which a federal claim, based on these allegations, could be sustained. Therefore, defendants' motion to dismiss pursuant to Rules 12(b)(6) and 56 is granted as to all defendants and all federal claims.

Having dismissed plaintiff's federal claims, I believe it would be inappropriate to assert pendent jurisdiction over plaintiff's state claims. The claims alleged in this case involve a new and unsettled area of law. Unless a federal question is at issue or diversity between the parties exists, the issues raised by suits involving surrogate parenting arrangements are better left to state courts and legislatures. Thus, I decline to address the merits of either plaintiff's state causes of action or defendants' arguments regarding the effect of the release on their liability.

### ORDER GRANTING MOTIONS TO DISMISS AND SUMMARY JUDGMENT

On March 26, 1987, the following motions came before the court for hearing:

1. The motions to dismiss of defendants Noel P. Keane, Noel P. Keane, P.C., Noel P. Keane, d/b/a Infertility Center of New York and defendant Philip J. Parker, M.D.. All named defendants joined in those motions.

2. The motion of defendants Ronald G. Zack, M.D., and Abraham Blumer, M.D., to dismiss or transfer the case as to them for lack of proper venue.

It is hereby ordered, for the reasons stated in open court and in accordance with the opinion filed this date, that:

The motion to change venue filed by defendants Zack and Blumer is denied; and

Because plaintiff has failed to state federal law claims on which relief can be granted, the motions of defendant Keane and defendant Parker to dismiss are granted under Federal Rules of Civil Procedure 12(b)(6) and 56, as to all Counts of plaintiff's complaint and as to all defendants; and further, that this dismissal is without prejudice to plaintiff's state claims.