Janice L. JORDAN

v.

CSX INTERMODAL, INC.

No. CIV. L–96–3253.

United States District Court,
D. Maryland.

Jan. 30, 1998.

---

J. Shawn Alcarese, Towson, MD, for Plaintiff.

Patricia Gillis Cousins, Venable, Baetjer & Howard, Rockville, MD, for Defendant.

## MEMORANDUM

LEGG, District Judge.

■ The plaintiff, Janice L. Jordan, has brought this action for wage discrimination against the defendant, CSX Intermodal, Inc. ("CSXI"), under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e ("Title VII"), and the Equal Pay Act of 1963, as amended, 29 U.S.C. § 206(d)("Equal Pay Act").[1] Jordan, an employee of CSXI, claims that she was impermissibly paid less than her male colleagues, Charles Spence and William McGlone, for comparable work. The defendant has filed a Motion for Summary Judgment.[2] For the reasons stated below, the Court finds that (a) Jordan has failed to present sufficient evidence that her job was substantially equal to McGlone's; (b) CSXI has produced legitimate, nondiscriminatory reasons for the salary differentials between Jordan and both Spence and McGlone; and (c) Jordan presents no evidence of discriminatory motive on the part of CSXI. Accordingly the Court, by separate Order, shall grant the defendants summary judgment.

## Background

As an "intermodal transportation company," CSXI engages in the transportation of freight by rail, trucks, and containerized distribution. Affidavit of Alan W. Peck, CSXI Vice–President of Domestic Marketing ("Peck Aff."), ¶ 3. CSXI's Pricing and Yield Management Department ("Pricing Department"), a part of CSXI's Marketing and Sales Group, is responsible for formulating competitive bids for freight transportation services. *Id.,* ¶ 4.

Janice Jordan began working as a clerical union employee for CSXI on August 5, 1977.[3] Affidavit of Janice L. Jordan ("Jordan Aff."), ¶ 1. In 1986–87, she took a management position as a Pricing Specialist in the Pricing Department. Plaintiff's Opp. to Mot. for Summ. J. ("Opp."), at 3. She became Assistant Manager for Pricing in 1988, was promoted to Pricing Manager in 1990, Senior Pricing Manager in 1992, and finally National Accounts Pricing Manager in 1995. Plaintiff's Exh. 5, CSX Historical Analysis McGlone/Jordan/Spence ("CSX Analysis").

Charles Spence began working for CSXI in 1956. Affidavit of Charles Spence ("Spence Aff."), ¶ 2. He became a Pricing Specialist and was promoted to Pricing Manager in the same years as Jordan. He was promoted to Senior Pricing Manager one year ahead of Jordan, in 1991, and finally became National Accounts Pricing Manager in 1995, the same year as Jordan. CSX Analysis. From 1992 to 1996, the years during which Spence and Jordan had the same title, Spence received a higher annual salary than Jordan.[4]

William McGlone was hired by CSXI in 1988 as an Assistant Manager for Pricing, the same position occupied by Jordan at the time. His annual salary was approximately $3,000 higher than Jordan's. CSX Analysis. McGlone was promoted to Manager for Pricing Analysis in 1990, and to Director of National Accounts in 1996. *Id.* From the time he began working at CSXI, until 1996,

---

1. Jordan also seeks relief under Chapter 717 of the Maryland Laws of 1965, as amended, Md. Code, Art. 49B § 14 *et seq.* While they address discrimination in employment, however, those provisions empower only the Maryland Human Rights Commission to initiate litigation upon an employer's refusal to comply with the Commission's orders. Md.Code, Art 49B § 12(a). The statute does not create a private cause of action. *Westray v. Porthole, Inc.,* 586 F.Supp. 834, 840 (D.Md.1984), *citing Dillon v. The Great Atlantic & Pacific Tea Co., Inc.,* 43 Md.App. 161, 166, 403 A.2d 406 (1979). Accordingly, Jordan may not rely on Md.Code, Art 49B § 16 for relief here, and the Court shall dismiss Jordan's claim under that statute.

2. Having reviewed the parties' submissions, the Court finds that a hearing is not necessary. Local Rule 105.6.

3. CSXI had several predecessor corporations, including C & O Railway, C & O/B & O Railway, the Chessie System and CSX Transportation. On January 1, 1988, CSXI split off from CSX Transportation. For purposes of this memorandum, the employer of Jordan, Spence, and McGlone shall be identified at all times as CSXI.

4. For each year between 1992 and 1996, Spence's annual salary was higher by $7,506, $7,527, $8,004, $8,556, and $8,784, respectively. CSX Analysis.

McGlone's salary was higher than Jordan's.[5]

Jordan claims that she was paid less than Spence and McGlone because of her gender, in violation of Title VII and the Equal Pay Act.

**Discussion**

The Court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether there is a genuine issue of material fact, the Court must view the facts, and all reasonable inferences to be drawn from them, in the light most favorable to the non-moving party. *Pulliam Inv. Co., Inc. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir.1987).

Material factual disputes are "genuine" only if a reasonable jury could return a verdict for the non-moving party based upon the record as a whole. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Id.* at 252.

**(a) Equal Pay Act**

■ To establish a *prima facie* case under the Equal Pay Act, Jordan must show that she (1) was paid less than a male colleague, and (2) performed work *substantially equal* to the male colleague's in skill, effort, and responsibility under similar working conditions. *Strag v. Board of Trustees*, 55 F.3d 943, 948 (4th Cir.1995). To meet this burden, Jordan must show that the jobs in question were "virtually identical"—if her job duties differed from those of McGlone and Spence, Jordan cannot establish an Equal Pay Act claim, regardless of the salary disparity. *Galarraga v. Marriott Employees Federal Credit Union*, 70 F.E.P. 1605, 1608 (D.Md.1996). Whether the positions in question are substantially equal is determined through a "factor by factor" comparison between them. *Id.*

If Jordan succeeds in proving her *prima facie* case, the burden of persuasion shifts to CSXI to show that the salary differential was justified by one of four statutory exceptions: (1) a seniority system; (2) a merit system; (3) a system pegging earnings to quantity or quality of production; or (4) any factor other than gender. 29 U.S.C. § 206(d)(1)(i)-(iv); *Diamond v. T. Rowe Price Associates, Inc.*, 852 F.Supp. 372, 389 (D.Md.1994).[6] If CSXI meets its burden, Jordan's claim must fail as a matter of law unless she can rebut CSXI's evidence. *Galarraga*, 70 F.E.P. at 1608, *citing Strag*, 55 F.3d at 948.

■ With respect to McGlone, Jordan has failed to show that between 1990 and 1996 her job at CSXI was substantially equal to his. On the contrary, Jordan admits that she

---

5. For each year between 1988 and 1996, McGlone's annual salary was higher than Jordan's by $2,892, $2,741, $6,758, $8,546, $8,639, $8,856, $9,100, $7,644, and $10,668 respectively.

6. The following legislative history elucidates the relationship between the Equal Pay Act's prohibitions and its exceptions, and is particularly significant for the case at hand:

"[The Equal Pay Act] is designed to eliminate any wage rate differentials which are based on sex. Neither the committee nor anyone proposing equal-pay legislation intends that other factors cannot be used to justify a wage differential. For example, a woman and a man may be doing precisely the same work at adjacent posts, and yet the man may be earning substantially more than the woman, or vice versa, because of his or her tenure on the job. Such seniority systems are valid exceptions provided they are based on tenure and not upon sex."
S. Rep. No. 176, 88th Cong., 1st Sess. 4 (1963) (emphasis added).
The House Committee added:
"It is the intent of this committee that any discrimination based upon any of [the statutory] exemptions shall be exempted from the operation of this statute. As it is impossible to list each and every exception, the broad general exclusion has also been included. Thus, among other things, shift differentials, restrictions on or differences based on time of day worked, hours of work, lifting or moving heavy objects, *differences based on experience, training, or ability would also be excluded.*"
H.R.Rep. No. 309, 88th Cong., 1st Sess. 3 (emphasis added).

was National Accounts Pricing Manager and reported to CSXI's Director of Domestic Pricing, while McGlone was Manager of Pricing Analysis and reported directly to CSXI's Vice–President for Pricing. Deposition of Janice L. Jordan ("Jordan Dep."), at 336, 349. In addition, Jordan identified at least fourteen job duties for which McGlone had primary responsibility, and which she did not perform on a regular basis.[7] Conversely, McGlone spent less than one percent of his time on national accounts, which were Jordan's primary responsibility. Jordan Dep. at 341; Peck Aff., ¶ 14. Under these circumstances, Jordan cannot establish that her job was substantially equal to McGlone's between 1990 and 1996. Accordingly, the salary differential between Jordan and McGlone during that period does not come under the purview of the Equal Pay Act.

■ Jordan also claims that CSXI violated her rights under the Equal Pay Act with respect to McGlone between 1988 and 1990. CSXI hired McGlone in 1988 into the same position held by Jordan at the time. For the next two years, CSXI paid McGlone approximately $3,000 more than Jordan. While this enables Jordan to present a *prima facie* case under the Equal Pay Act, CSXI presents strong evidence of reasons other than Jordan's gender for the salary differential.

The undisputed record shows that McGlone earned a bachelor's degree in Business Logistics from Pennsylvania State University in 1977, and successfully completed at the Academy of Advanced Transportation a two-year course in Traffic Management in 1980 and another course in Loss and Damage in 1981. Defendant's Exh. 5, Affidavit of William McGlone ("McGlone Aff."), ¶¶ 3, 5–6. Between 1977 and 1983, McGlone was employed as a transportation and pricing specialist at Gould, Inc., a company in the commercial freight transportation industry.

McGlone Aff., ¶ 4. At Gould, McGlone had significant supervisory and accounting responsibilities. *Id.* Between 1983 and 1988, McGlone was employed by a number of other companies in the industry, where again he had substantial managerial, accounting, and supervisory responsibilities. *Id.,* ¶¶ 7–9.

Jordan, by contrast, completed her high school education in 1977, and began working at CSXI in the same year. Jordan Dep. at 61. Since 1977, with help from CSXI in the form of tuition reimbursements, she has pursued college-level studies at Essex College, Towson State University and the Johns Hopkins University. Despite her efforts, however, Jordan has not yet obtained a college degree. *Id.* at 334. Moreover, Jordan's first job CSXI entailed standard clerical duties such as typing, operating adding machines, answering the phones, greeting visitors, and filing. *Id.* at 83–84. By considerable effort, Jordan made significant progress through the ranks at CSXI. Nevertheless, she received no significant accounting responsibilities until 1986, when she became a Pricing Analyst, and no supervisory responsibilities until at least 1988, when McGlone was hired and both he and Jordan became Assistant Managers for Pricing. Jordan Dep., at 83–84, 87–88, 93, 100–107.

Such a record offers ample evidence to justify on grounds other than gender the salary differential between Jordan and McGlone from 1988 to 1990. William Peck confirmed that McGlone was paid more than Jordan on account of his "substantially greater education and experience in the intermodal transportation industry." Peck Aff., ¶ 15. At summary judgment, Jordan does not dispute any of the above facts, and presents no other evidence to rebut CSXI's strong showing of legitimate justification for the salary differential. Accordingly, Jordan's claim un-

---

7. These duties included: pricing for the plant mailer program; truckload and L.T.L. pricing; establishing and setting rates for the brokerage program; monitor competitors' book rates; adjusting CSXI rates based on competitors' rates; managing interline rates; conducting analyses for the implementation of CSXI's general rate increases; acting as liaison with the Treasury and Economic department for margin analysis reports and SPQ margin reports; setting up and managing the T.L.C. Trucking intermodal lanes rates program; acting as a train team captain; acting as liaison on Department of Defense business; pricing UPS and U.S. Postal Service rates; working with other CSXI departments on special UPS trains; preparing monthly reports for Marketing on distributor pricing performance; running focus reports for the Pricing department. Jordan Dep. 337–348.

der the Equal Pay Act with respect to McGlone must fail as a matter of law.

■ Next, Jordan claims that CSXI violated her rights under the Equal Pay Act because, beginning in 1988, she held positions virtually identical to Spence's yet was paid a consistently lower annual salary than his. For summary judgment purposes the Court assumes, *arguendo*, that Jordan has produced sufficient evidence of substantial similarity between her job and Spence's to establish a *prima facie* case under the Equal Pay Act.

Nevertheless, CSXI has shown, and Jordan admits, that Spence's tenure at CSXI was 21 years longer than Jordan's. Jordan Dep. at 358–59. In addition, the parties agree that, prior to 1988, Spence held positions of considerable supervisory responsibility at CSXI.[8] By contrast, Jordan held no positions with supervisory responsibility at CSXI at least until 1988. Jordan Dep. at 363. Similarly, Jordan had no significant experience in accounting before 1988, while Spence had eleven years of experience as an internal auditor working independently within CSXI. Jordan Dep. 360–61; Spence Aff., ¶ 4.

■ Jordan objects that CSXI may not rely on Spence's seniority because there is no evidence of a written company compensation policy that would justify a seniority-based salary differential between her and Spence. This objection, however, is inapposite. The purpose of the Equal Pay Act is not to compel employers to abide by written compensation policies, but to eliminate salary differentials that are based on gender. *EEOC v. Aetna Insurance Co.*, 616 F.2d 719, 725. As with McGlone, Jordan offers no evidence to rebut CSXI's strong showing that Spence's greater tenure and experience

motivated the salary differentials between him and Jordan.[9] On this record, no reasonable jury could fail to recognize that CSXI's decision to compensate Spence more than Jordan was entirely unrelated to Jordan's gender.

Accordingly, the Court shall grant CSXI summary judgment on Jordan's Equal Pay Act claims.

**(b) Title VII**

■ When, as here, a plaintiff offers no direct evidence of discriminatory animus on the part of her employers, Title VII requires the application of a three-step, burden-shifting method of proof, introduced by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and summarized by the Fourth Circuit as follows:

> The plaintiff must first make out a *prima facie* case of discrimination.[10] Establishing a *prima facie* case shifts a burden of production to the defendant to present evidence of a legitimate, nondiscriminatory reason for the adverse action. If the defendant produces evidence of such a reason, then the plaintiff must show that the reason presented by the defendant is merely a pretext for discrimination. *The plaintiff retains the ultimate burden of persuasion throughout the process.*

*Jamil v. Secretary, Dept. of Defense*, 910 F.2d 1203, 1206 (4th Cir.1990) (emphasis and notes added).

■ In this case, as shown in the previous section, CSXI has produced substantial evidence of legitimate, nondiscriminatory reasons for the salary differentials between both Jordan and McGlone and Jordan and Spence. By contrast, Jordan presents no evidence, in the form of affidavits, depositions, or other-

---

**8.** From 1956 to 1967, Spence was Head Adjustment Clerk for Freight Accounts, where he supervised the work of seven employees. Spence Aff., ¶ 3. From 1978 to 1986, he was Manager of the Zone Accounting Bureau in Chicago, Illinois, and Chief Clerk of Rates in the Central Zone Accounting Bureau in Baltimore, Maryland. In these positions, Spence oversaw the distribution of bills to customers within each region and supervised nine other employees. Spence Aff., ¶ 5.

**9.** Again the testimony of Peck, who was responsible for the salary differentials between Jordan and Spence, unequivocally supports this finding. Peck Aff., ¶¶ 8–11.

**10.** The elements of the *prima facie* case for wage discrimination are the same under Title VII as under the Equal Pay Act. *Cherrey v. Thompson Steel Co.*, 805 F.Supp. 1257, 1262 (D.Md.1992).

wise, of discriminatory intent on the part of anyone at CSXI. On the contrary, Jordan testified that she considered her supervisors generally fair people who would not engage in discrimination, and that her relationships with them were positive. Jordan Dep. at 406–16. Under such circumstances, Jordan cannot prove that the reasons adduced by CSXI for the salary differentials were a pretext for gender discrimination. Accordingly, the Court shall grant CSXI summary judgment on Jordan's Title VII claims.

## Conclusion

For the reasons stated above the Court, by separate Order, shall grant the defendant summary judgment.

### ORDER

For the reasons stated in the memorandum of even date, the Court hereby GRANTS the defendant's Motion for Summary Judgment.

The Clerk is directed to CLOSE this case.