MISSOURI COMMISSION ON HUMAN
RIGHTS, Appellant,

v.

SOUTHWESTERN BELL TELEPHONE
COMPANY, Respondent.

No. WD 36363.

Missouri Court of Appeals,
Western District.

Aug. 27, 1985.

Motion for Rehearing and/or Transfer to
Supreme Court Overruled and Denied
Oct. 1, 1985.

Application to Transfer Denied
Nov. 21, 1985.

William L. Webster, Atty. Gen., Nina Hazelton, Asst. Atty. Gen., Jefferson City, for appellant.

Deborah Sue Doud, Kansas City, for respondent.

Before LOWENSTEIN, P.J., and SHANGLER and SOMERVILLE, JJ.

LOWENSTEIN, Judge.

This appeal concerns handicap discrimination in its hiring practices by Southwestern Bell (Bell) as against the claimant Shirley Hodges. *See* §§ 296.010—296.070, RSMo, 1978. As described *infra*, "handicap," as applicable here means a physical impairment resulting in a disability unrelated to job duties. In April, 1979, Hodges applied for the position of clerk/typist at Southwestern Bell and received an offer of employment conditioned on her "pre-placement medical evaluation form" being satisfactory. Hodges checked off twelve medical conditions including most recently that

she suffered from a weight problem, dizziness or fainting, and anemia. The Assistant Staff Manager of Employment decided the number of conditions checked warranted asking Hodges to submit to a physical examination before an employment decision could be made. In May, 1979, the examining physician, Dr. Hungate, indicated that Hodges was 52 pounds overweight, (she was 5 feet 4 inches and weighed 205 pounds) had a blood pressure reading of 154/106 and had 1 + albumin in her urine.

Southwestern Bell's medical advisor, Dr. Hibbard recommended that Hodges' employment be deferred until her blood pressure and weight were under control. Based on the Hungate report and the Hibbard opinion, Bell advised Hodges her employment would be deferred until her weight and blood pressure were under control. She was advised to see her physician. Hodges sought no treatment, but filed a complaint with Missouri Commission on Human Rights (Commission) alleging employment discrimination. The Commission found she had a physical impairment, hypertension, which was treated by the employer as a disability which was not related to the job of a clerk/typist. The Commission found Southwestern Bell in violation of § 296.020, and ordered it to pay Hodges $9,272.00 in backpay and offer her the first available clerk/typist position. The Commission also ordered Bell to desist such further activities. Bell sought review of the decision, and the trial court overturned the Commission's finding as being unsupported by the evidence and a misapplication of the law. The Commission now appeals. The nature of review here is summarized in Kansas City v. Missouri Commission on Human Rights, 632 S.W.2d 488, 490 (Mo. banc 1982). As pertinent here, where a decision is based on interpretation or application of law, the reviewing court is not restricted to the decision of the administrative body, but may independently review conclusions of law.

Two doctors testified at the hearing: Dr. Winer, a specialist in hypertension, who was called by the Commission, and Dr. Hibbard, an internist who was employed by

Bell as its medical advisor. Neither of these doctors had actually examined Shirley Hodges. Their opinions in this case were based on the medical history provided by Hodges and the physical exam results as performed by the then deceased Dr. Hungate.

Winer testified that Hodges' blood pressure at the time of the exam indicated a moderate elevation of blood pressure. He had some concern whether this was an accurate reading since no one knew if the examining doctor had used the wider blood pressure cuff recommended for obese patients. On such an overweight person the normal cuff could give an inaccurately high reading. In Winer's opinion, this reading, if accurate, would not *by itself* indicate Hodges was in any imminent danger, or that she could not perform the functions of a clerk/typist. However, Winer made it clear this judgment was not accurate without additional data.

On cross-examination Winer indicated that even one episode of dizziness or fainting, while not of great significance, should be investigated, and if the episodes occur repeatedly the person could be a danger to themselves and others. Winer also agreed that high blood pressure coupled with being overweight and accompanied by fainting or dizziness could indicate vascular diseases which could be very dangerous to the individual and should also be investigated.

Hibbard, the doctor who recommended that Hodges' employment be deferred until she could get her weight and high blood pressure under control, testified that his recommendation was based on the medical history where Hodges indicated she had suffered from dizzy spells and faintness within the month that she applied, and that she had a history of anemia, and that the examining physician found an elevated blood pressure and 1 + albumin in her urine. In Hibbard's opinion the blood pressure reading of 154/106 for a 35 year old female who weighs 205 pounds is "an alarming level," that warrants further examination and explanation. Furthermore,

he considered it harmful if she were to work with an unexplained history of dizziness and fainting. He concluded that while no conclusive diagnosis could be made, these findings should be evaluated carefully before she would be recommended for employment. Mrs. Hodges' claim was she did not have high blood pressure and alleged she was not hired because of "border line high blood pressure and overweight." Before the Hearing Officer she could not remember any dizzy spells or why she had checked that box, and the other things she had checked, such as anemia were unexplained at the hearing. No mention was made at the hearing of a company notation as to her mental stress. The Commission made no physical findings on Hodges other than overweight and a moderate level of elevated blood pressure. The conclusions adopted by the Commission do not specifically adopt a finding of medical impairment resulting in disability, but do state that because the company regarded her as having such an impairment she would be declared disabled.

Missouri law under § 296.020(1)(a) RSMo 1978, as pertinent to this case, makes it unlawful for an employer to discriminate against an individual by not hiring them on the basis of the person's handicap. The term "handicap" is defined in § 296.010(4) as:

> [A] physical or mental impairment resulting in a disability unrelated to a person's ability to perform the duties of a particular job or position for which he would otherwise be eligible and qualified for employment or promotion.

There is no Missouri case law interpreting this section. Since the alleged discrimination against Hodges took place in 1979, the Human Rights Commission has adopted regulations construing this statute. *See* 4 CSR 180–.3.060. Contained in these regulations, "impairment," as applicable here, is defined as a condition affecting the cardiovascular system; "Disability" is defined as an impairment which limits a major life activity, or has a record of impairment, or is regarded by the employer as having an impairment. Sections 4 CSR 180–.3.-060(1)(A)1 and (1)B.

■ The Commission's conclusions were premised on these regulations which it tacitly admits were not in effect when the events in question took place. The Commission in ruling for Hodges found the high blood pressure affected the cardiovascular system, making it an impairment, and that Bell regarded the high blood pressure as a disability. The statutory definition of handicap stood without supporting regulations in May and June of 1979 when the Hodges' application was processed. To now apply those later adopted regulations, to this case is unfair and will not be done. This puts review of the Commission's order in a strange posture. By not finding the claimant "disabled" under the evidence, and by holding her disabled because Bell regarded her as having an impairment, the Commission has in effect concluded Hodges had no disability because of obesity and high blood pressure. In this conclusion, the Commission may have been wrong. In relying on a regulation that was not in effect which created disability because of how the employer treated the person's impairment, the Commission was in error. The net effect is the order of the Commission finding Hodges disabled is as a result of a misapplication of law. The Commission's order therefore cannot stand.

All this points out the very limited authority of this case and the scope of the opinion. By foreclosing a necessary finding of a disability under the 1979 state law the real issue in this case cannot be ultimately decided: is a person with treatable but untreated obesity and moderately high blood pressure disabled and handicapped within the meaning of the discrimination statute, and if so does the disability relate to the job of a clerk/typist? A brief review of whether obesity and high blood pressure as giving rise to handicap is in order.

If one is obese, is that person by virtue of that fact *alone*, handicapped? Probably not. In *Philadelphia Electric Co. v. Commonwealth of Pennsylvania Human Relations Commission,* 68 Pa.Cmwlth. 212,

448 A.2d 701 (1982), the court reversed a finding of the Commission that *all* morbidly obese persons are handicapped because they are potentially susceptible to several diseases. *See also Greene v. Union Pacific R. Co.*, 548 F.Supp. 3 (W.D.Wash.1981), (where the court found obesity not a handicap because it was not an immutable condition such as blindness or lameness). The *Philadelphia Electric* decision allowed the employer to refuse to hire someone on the basis of her abnormal weight. (The applicant was 5'8" and weighed 341 pounds). However, the court emphasized there was not a scintilla of evidence that the applicant had any of the diseases or physical restrictions to which an obese person is potentially susceptible. She had no cardiovascular or pulminary disease, nor did she have hypertension. This is where the present case is distinguishable.

Since Hodges also had high blood pressure, the next question is whether that alone is a handicap. Courts across the country have been split on this issue. In *Greene v. Union Pacific R. Co., supra,* the federal court applying Washington statutes found that hypertension was *not* a handicap. On the other hand the California Supreme Court in *American Nat. Ins. Co. v. Fair Employment,* 32 Cal.3d 603, 186 Cal. Rptr. 345, 651 P.2d 1151 (1982), held that high blood pressure is a protected physical handicap under the California Fair Employment Practice Act.

Other cases point out a difference between medically controlled hypertension, and that which is untreated. In *Arnot Ogden Memorial Hospital v. State Division of Human Rights,* 67 A.D.2d 543, 416 N.Y.S.2d 372 (1979), a nurse was rejected for employment at a time when she was undergoing successful treatment for her high blood pressure, and that the court found impermissible discrimination. But the court was careful to point out:

> If this complainant had refused to seek and follow medical direction, her disability would, in our view, be related to and, if left unchecked and unattended, inevitably interfere with her ability to perform the activities of the job. *Id.* at 374.

Similarly, in Milwaukee County v. Wisconsin DILHR, 15 E.P.D. Paragraph 7995 (1978), the court found that *"medically controlled* hypertension is not significantly different than medically controlled heart disease, leukemia, or diabetes," and therefore, would be a handicap. In *Allen v. Southeastern Michigan Transportation Authority,* 132 Mich.App. 533, 349 N.W.2d 204 (1984), a bus driver applicant was refused employment for high blood pressure and arthritis. He then went to his private physician for treatment, and the doctor reported that, *with medication,* his blood pressure would be within normal limits. The court noted that had plaintiff's problem only involved his blood pressure the case would not have been litigated since the employer's practice was to hire applicants who were able to treat their high blood pressure.

In a case similar to the one at bar, *Bey v. Bolger,* 540 F.Supp. 910 (E.D.Pa.1982), a man sought reinstatement as a clerk with the U.S. Postal Service after a two year absence. Upon the required physical he was found to have controlled or poorly controlled hypertension. He was told to re-apply at a later date after adequate treatment, but this was never done. The court held that plaintiff had established a prima facie case since the postal service conceded that but for his uncontrolled hypertension, he would have been reinstated. However, the Postal Service met its burden that this condition was "job-related" in that plaintiff could not safely and efficiently perform the essential functions of the position without endangering his own health and safety. *Id.* at 930. The burden then shifted *back* to plaintiff to prove he could meet these job-related criteria. That plaintiff, like Hodges in the present case, was provided an opportunity to reapply for a position in the event adequate treatment was obtained. But there, as here, the plaintiff did not provide evidence to that effect. The federal court found in favor of the employer.

As announced in *Midstate Oil Company, Inc. v. Missouri Commission on Human Rights*, 679 S.W.2d 842, 845 (Mo. banc 1984), the pivotal issue in an unlawful discrimination case is whether the employer's challenged conduct was motivated by an invidious purpose or was based on a legitimate and rational consideration. The employee must establish by a preponderance of the evidence a prima facie case of discrimination. This is the first phase of the analyzing process. As spelled out in *Midstate*, the employee must, as relevant here, provide evidence she was handicapped and as such a member of a class protected by § 296.020.1.

There is just no substantial evidence in this record to underpin a conclusion of handicap. As in *Midstate*, the record here was sketchy and it was speculation on the Commission's part to find handicap. 679 S.W.2d at 847. The court agrees with the trial court's judgment of the Commission misapplying the law. Hodges' claim and testimony steadfastly denied her disability. This may account for the fact that she did not intervene in these proceedings. *Midstate, supra,* at 844 n. 2. Hodges chose to not seek medical treatment or even a second opinion. So, even if her blood pressure alone, or with obesity would amount to disability to be viewed in a light of the job, she, by ignoring the situation and taking no steps to treat and control her impairment cannot get the benefit of the handicap law.

The judgment of the circuit court, which reversed the Commission is affirmed.

All concur.