**MISSOURI COMMISSION ON HUMAN RIGHTS, Appellant,**

v.

**RED DRAGON RESTAURANT, INC., Respondent.**

**No. WD 55419.**

Missouri Court of Appeals, Western District.

March 31, 1999.

Rehearing Denied June 1, 1999.

---

Jeremiah W. (Jay) Nixon, Atty. Gen., Keith D. Halcomb, Asst. Atty. Gen., Jefferson City, for appellant.

Lyle L. Odo, Platte City, for respondent.

Before BRECKENRIDGE, C.J., ULRICH and HANNA, JJ.

BRECKENRIDGE, Judge.

The Missouri Commission on Human Rights (MCHR) appeals from the trial court's "Amended Judgement/Order Nunc Pro Tunc" which reversed the MCHR's finding of discrimination against Red Dragon Restaurant, Inc. The MCHR issued its order, based on the hearing commissioner's "Findings of Facts and Conclusions of Law, Recommended Decision and Order," concluding that Red Dragon had discriminated against Judith Rupard on the basis of her association with disabled people in violation of § 213.065, RSMo 1986.[1] On appeal, Red Dragon argues that associational discrimination as embodied in § 213.070, RSMo Supp.1992, was not effective when the discriminatory incident occurred in 1991, and that associational discrimination was not intended as a cause of action under §§ 213.065 and 213.070, as they existed in 1991. Further, Red Dragon argues that the MCHR abused its discretion in awarding Ms. Rupard $590.40 for out-of-pocket expenses and $300 as actual damages for the deprivation of her civil rights. The judgment of the trial court is reversed and the case is remanded to the circuit court with directions to remand to the MCHR to enter an amended order consistent with this opinion.

**Factual and Procedural Background**

On September 12, 1991, the complainant, Judith Rupard, accompanied two friends, Cynthia Robin and Bill Stephan, to the Red Dragon Restaurant for dinner to celebrate the recent move of Ms. Robin. Mr.

---

1. All statutory references are to the Revised Statutes of Missouri 1986, unless otherwise

indicated.

Stephan and Ms. Robin are blind and use guide dogs to aid their mobility. Mr. Stephan and Ms. Robin had their guide dogs with them when they attempted to dine at the Red Dragon. However, upon entering the restaurant, the group was informed that the guide dogs could not enter the restaurant. Although the group tried to explain that the restaurant was required by law to allow guide dogs to enter, the restaurant employees still refused them admission. The employees offered to let the dogs remain in the lobby with a security guard, but that arrangement was not acceptable to the group. The employees then informed the three that the restaurant would not serve them and they would have to leave. After the refusal, Ms. Rupard informed the patrons of the restaurant that she and her friends were refused service because her friends were blind and the restaurant would not allow them to enter with their guide dogs.

Ms. Robin and Mr. Stephan filed suit in the Circuit Court of Jackson County against Red Dragon for violations of the Missouri Human Rights Act (MHRA). The court found that Red Dragon's refusal to serve Mr. Stephan and Ms. Robin with their guide dogs was a refusal to make a reasonable accommodation for their handicap as required by § 213.065. Ms. Rupard subsequently filed her own complaint with MCHR, which is the subject of this action, alleging associational discrimination against Red Dragon. Ms. Rupard's complaint was heard before the MCHR on November 1, 1994. On February 26, 1996, the MCHR filed its "Findings of Fact, Conclusions of Law, Recommended Decision and Order," and a "Notice of Findings of Fact, Conclusions of Law, and Decision and Order, and Notice of Statutory Right to Judicial Review" was issued on April 22, 1996. The MCHR found that Red Dragon had violated Chapter 213, by refusing to serve Ms. Rupard because of her association with handicapped persons when it refused to serve them unless the guide dogs were left at the door. Therefore, the MCHR ordered Red Dragon to pay Ms. Rupard $590.40 for out-of-pocket expenses and $300.00 as actual damages for the deprivation of her civil rights.

Red Dragon appealed the MCHR's decision to the Circuit Court of Platte County. In its "Amended Judgment/Order Nunc Pro Tunc," the court stated that Ms. Rupard claimed relief under the 1992 amendment to § 213.070, which "affects the substantive rights of the parties and should not be considered procedural." The court found that the legislature did not order § 213.070 to be retroactive and, therefore, the legislative intent was that it not be applied retroactively. Because the alleged discrimination occurred on September 12, 1991, before the amendment of § 213.070, the trial court reversed the MCHR's finding of associational discrimination. Thereafter, the MCHR filed a timely appeal to this court.

### Standard of Review

On appeal, this court reviews the decision of the administrative agency, and not that of the circuit court. *Missouri Ethics Com'n v. Thomas,* 956 S.W.2d 456, 457 (Mo.App.1997). A reviewing court is usually limited to determining if the administrative agency's decision is supported by substantial competent evidence based on the record as a whole, whether the decision is arbitrary, capricious or unreasonable, or whether the agency abused its discretion. *Id.;* § 536.140.2. However, when, as here, the decision of the agency involves the interpretation of law and application of the law to undisputed facts, this court must form its own independent conclusions and is not bound by the interpretation of the hearing examiner. *Id.See also Kansas City .v. Missouri Com'n on Human Rights,* 632 S.W.2d 488, 490 (Mo. banc 1982).

While we are not bound by the hearing examiner's interpretation of the law, our review of the case is limited to applying the law only to the facts contained in the record on appeal. *Gannett*

*Outdoor Co. of Kansas City v. Board of Zoning Adjustment of Jackson County,* 943 S.W.2d 359, 362 (Mo.App.1997); *Tonkin v. Jackson County Merit System Commission,* 599 S.W.2d 25, 29–30 (Mo.App. 1980). "[B]ecause decisions of administrative tribunals are not subject to *de novo* review, additional evidence would serve no purpose." *Gannett,* 943 S.W.2d at 363. The MCHR filed in this court the affidavit of Alvin Plummer, Executive Director of the MCHR from 1981 to 1997, in support of its interpretation of § 213.065. However, the affidavit was not presented at the administrative hearing and is not part of the record on appeal. *See Gannett,* 943 S.W.2d at 362; *Tonkin,* 599 S.W.2d at 29–30. Therefore, we will not consider Mr. Plummer's affidavit in reviewing this appeal.

## Associational Discrimination

■ As its first point on appeal, Red Dragon claims that MCHR erred in sustaining Ms. Rupard's claim because she did not state a claim for relief under § 213.065. Red Dragon argues that the legislature did not intend to create a cause of action for associational discrimination under the version of § 213.065 in effect at the time of the incident at the Red Dragon Restaurant. Red Dragon argues that the plain language of the statute evidences that the legislature did not intend for § 213.065 to permit claims by non-handicapped people who were discriminated against because they were accompanied by handicapped people. Section 213.065 prohibits discrimination in public accommodations as follows:

1. All persons within the jurisdiction of the state of Missouri are free and equal and shall be entitled to the full and equal use and enjoyment within this state of any place of public accommodation, as hereinafter defined, without discrimination or segregation on the grounds of race, color, religion, national origin, sex, ancestry, or handicap.

2. It is an unlawful discriminatory practice for any person, directly or indirectly, to refuse, withhold from or deny any other person, or to attempt to refuse, withhold from or deny any other person, any of the accommodations, advantages, facilities, services, or privileges made available in any place of public accommodation, as defined in sections 213.010 to 213.0126, or to segregate or discriminate against any person in the use thereof on the grounds of race, color, religion, national origin, sex, ancestry, or handicap.

\* \* \*

There is no case law in Missouri addressing whether associational discrimination was a cause of action under § 213.065. Therefore, this court must interpret the statute by determining the legislature's intent when it enacted the statute.

■ The primary purpose of statutory interpretation is to determine the intent of the legislature from the words used in the statute and give effect to that intent. *Wallace v. Van Pelt,* 969 S.W.2d 380, 383 (Mo.App.1998). The words of a statute are to be given their plain and ordinary meaning. *Id.* " 'Further insight into the legislature's object can be gained by identifying the problems sought to be remedied and the circumstances and conditions existing at the time of the enactment.' " *Id.* (quoting *Sermchief v. Gonzales,* 660 S.W.2d 683, 688 (Mo. banc 1983)). *See also Schneider by Schneider v. State of Missouri, Div. of Water Safety,* 748 S.W.2d 677, 678 (Mo. banc 1988) (finding that "[t]he legislative intent and meaning of the words can, in many instances, be found in the general purposes of the legislative enactment").

■ In determining legislative intent, this court must bear in mind that "[r]emedial statutes should be construed liberally to include those cases which are within the spirit of the law and all reasonable doubts should be construed in favor of

applicability to the case." *State ex rel. Ford v. Wenskay,* 824 S.W.2d 99, 100 (Mo. App.1992). *See also Perez v. Missouri State Bd. of Registration for Healing Arts,* 803 S.W.2d 160, 165 (Mo.App.1991). Section 213.065 of the MHRA was enacted to provide "[a]ll persons within the jurisdiction of the state of Missouri ... the full and equal use and enjoyment within this state of any place of public accommodation...." Section 213.065.1. This mandate that all persons be treated equally in public accommodations was enacted "in the interest of public welfare," *Hagan v. Director of Revenue,* 968 S.W.2d 704, 706 (Mo. banc 1998), and " 'introduce[s] some new regulation conducive to the public good[ ... ].' " *Ford,* 824 S.W.2d at 100 (quoting *City of St. Louis v. Carpenter,* 341 S.W.2d 786, 788 (Mo.1961)). Therefore, the statute is a remedial and we must afford it a broad interpretation "in order to accomplish the greatest public good." *Hagan,* 968 S.W.2d at 706; *Ford,* 824 S.W.2d at 100.

The plain meaning of the words of the § 213.065 indicate that the general purpose of the act is to prevent *anyone* in the state of Missouri from being refused public accommodations because of discriminatory attitudes toward persons with disabilities. The plain language of the statute extends its protection to all people within the state of Missouri, not just all handicapped people. Nowhere does the statute limit its application to those persons who themselves suffer from a disability. The statute goes on to make it unlawful to discriminate in public accommodations "on the grounds of ... handicap," but there is no language limiting the protection to those persons within the state who are handicapped. *See* § 213.065.2. Because the general purpose of the MHRA evidences a legislative intent to prohibit *all* discrimination based on disability and the

language of the statute does not preclude a cause of action for associational discrimination by a non-handicapped person, we find that the legislature intended state a cause of action under § 213.065 for associational discrimination.

However, Red Dragon also argues that because the legislature added § 213.070(4)[2] to the MHRA in 1992, associational discrimination was not prohibited by § 213.065 prior to that amendment. The MCHR argues that since 1978, it has interpreted § 213.065 to prohibit associational discrimination and that the legislature amended § 213.070, RSMo Supp.1992, to expressly include the prohibition because the Department of Housing and Urban Development required that the Missouri statute be substantially similar to the federal statute to continue contracting with the MCHR. This court does not agree with Red Dragon's argument that the addition of § 213.070(4) shows that associational discrimination was not prohibited prior to 1992.

While it is presumed that in enacting a new statute or amending an existing one, the legislature intended to effect some change in the existing law, "it is also true that the purpose of a change in the statute can be clarification." *Mid–America Television Co. v. State Tax Com'n of Missouri,* 652 S.W.2d 674, 679 (Mo. banc 1983). Because this court finds that in 1991, § 213.065 of the MHRA, by its plain language and the spirit of the law, provided a cause of action for those discriminated against because they were in the company of handicapped individuals, this court believes that the legislature amended § 213.070 to clarify a cause of action for associational discrimination and not to effect a substantive change in the law. Therefore, this court finds that a non-handicapped person can state a claim under § 213.065 if that person alleges a

2. Section 213.070(4), RSMo Supp.1992, reads as follows:

It shall be an unlawful discriminatory practice:

(4) To discriminate in any manner against any other person because of such person's association with any person protected by this chapter.

violation of one of the enumerated rights protected by the statute.

Our interpretation of § 213.065 is supported by federal cases addressing associational discrimination under various federal civil rights statutes. When Missouri has not addressed an issue under the MHRA, Missouri courts may look to federal decisions interpreting similar civil rights laws. *Wentz v. Industrial Automation,* 847 S.W.2d 877, 879 (Mo.App.1992). *See also Midstate Oil Co., Inc. v. Missouri Com'n on Human Rights,* 679 S.W.2d 842, 845–46 (Mo. banc 1984); *Laclede Cab Co. v. Missouri Com'n on Human Rights,* 748 S.W.2d 390, 393–94 (Mo.App.1988); *Missouri Com'n on Human Rights v. Southwestern Bell Tel. Co.,* 699 S.W.2d 75, 77–78 (Mo.App.1985). The federal courts' treatment of claims of associational discrimination in *Westray v. Porthole, Inc.,* 586 F.Supp. 834 (D.Md.1984), and *Clayton v. White Hall School Dist.,* 875 F.2d 676 (8th Cir.1989), is instructive of when associational discrimination is actionable under statutes which do not specifically authorize that cause of action. Each case addresses whether a person who is not a member of a protected class may bring suit under a civil rights statute, but each case reaches a different result because of the factual allegations argued by the plaintiff.

In *Westray,* five black and seven white individuals alleged they were discriminated against, in violation of 42 U.S.C. § 1981,[3] on several occasions when they attempted to enter two bars. 586 F.Supp. at 836. On those occasions, the whites were permitted to enter, but the blacks were not. *Id.* The District Court of Maryland dismissed the discrimination complaint as to the white plaintiffs. *Id.* The court characterized the plaintiffs' arguments as a claim that the defendants had interfered with their rights of association.

*Id.* The court went on to explain that "[a] plaintiff who alleges interference with his 'rights of association,' but not with one of the rights listed in the statute does not state a claim for relief under 42 U.S.C. § 1981." *Id.* The court noted that although the parties couched their arguments in terms of standing, the true issue was whether the white plaintiffs stated a claim for relief under § 1981. *Id.* Therefore, because the parties did not raise true standing arguments, the court did not address the constitutional and prudential limitations of standing.[4] *Id.* at 836–37.

While acknowledging that white plaintiffs may sue under § 1981, the court stated that the statute protects only enumerated rights. *Id.* at 837. The court held that " '[t]o state a claim under § 1981, a plaintiff must prove a deprivation of one of the enumerated rights which, under similar circumstances, would have been accorded to a person of a different race and also that such deprivation was intentional and motivated by racial prejudice.' " *Id.* (quoting *Robertson v. Maryland State Dep't of Personnel,* 481 F.Supp. 108, 112(D.Md.1978)). The court distinguished *Westray* from *Valle v. Stengel,* 176 F.2d 697 (3d Cir.1949), and *DeMatteis v. Eastman Kodak Co.,* 511 F.2d 306, *modified,* 520 F.2d 409 (2d Cir.1975), two cases in which whites were treated discriminatorily because of their association with blacks. *Id.* at 837–38. The court concluded that § 1981 provides a claim for relief to white

**3.** Section 1981(a) states:
All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

**4.** Likewise, the parties in this case have approached the issue in terms of whether the statute authorizes Ms. Rupard's claim. Therefore, this court will not address the constitutional and prudential limitations on standing, but we will endeavor to determine if Ms. Rupard has "standing" in terms of whether she is a person entitled to bring a claim under § 213.065.

people in situations such as *Valle* and *De-Matteis* not because the illegal discrimination against a black person precluded their freedom of association, but because the white person's own rights under the statute had been impinged. *Id.* at 838.

In another case, *Clayton*, the claimant was a white employee of White Hall School District. 875 F.2d at 678. Until December of 1980, Betty Clayton was a resident in the White Hall School District and her child attended a White Hall school. *Id.* When Ms. Clayton moved out of the White Hall School District in 1980, her child was allowed to continue attending school in the district until 1983. *Id.* In 1983, Lloyd Gaynor, a black employee of White Hall who resided outside the district, tried to enroll his child in a school in the district. *Id.* White Hall refused to enroll Mr. Gaynor's child and began enforcing its policy requiring residence in the district as a prerequisite to enrollment, except for children of certified or administrative personnel. *Id.* After Mr. Gaynor attempted to enroll his child, White Hall informed Ms. Clayton that her child could no longer attend White Hall schools. *Id.* Neither Mr. Gaynor or Ms. Clayton were certified or administrative personnel. *Id.*

Ms. Clayton filed suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.,[5] alleging, in part, that "[White Hall's] racial discrimination directly and negatively impacted on the terms and conditions of her employment." *Id.* She later amended her complaint to include an allegation that White Hall's policies created a racially hostile work environment. *Id.* Reviewing the district court's grant of summary judgment against Ms. Clayton, the Eighth Circuit stated that the "zone of interest" under Title VII should be liberally construed "to carry out the purpose of Congress to elimi-

nate the inconvenience, unfairness and humiliation of racial discrimination." *Id.* at 679 (quoting *Parham v. Southwestern Bell Telephone Co.,* 433 F.2d 421, 425 (8th Cir. 1970)). The court noted that non-minorities are not precluded from having standing under Title VII, but they must have been aggrieved by racial discrimination to allege injury under Title VII. *Id.* The court found that Ms. Clayton alleged injury in fact because her "interest in a work environment free of racial discrimination [was] clearly within the zone of interest protected by Title VII." *Id.* at 680. Therefore, the Eighth Circuit found that Ms. Clayton had standing to sue under Title VII. *Id.*

While neither § 1981 nor Title VII specifically provides for a cause of action for non-minorities, both *Westray* and *Clayton* interpreted the federal statutes to permit non-minorities to bring suit for discrimination. In both *Westray* and *Clayton*, the courts focused on the rights or interests the legislature sought to protect when it enacted the statute to determine if the plaintiffs were covered by the act. 586 F.Supp. at 837, 875 F.2d at 679. Additionally, both cases acknowledged that white plaintiffs could state a claim if they alleged a violation of one of the protected rights enumerated in the statute under which they were suing. *Westray,* 586 F.Supp. at 837; *Clayton,* 875 F.2d at 679. Because the white plaintiffs in *Westray* did not allege a violation of one of the enumerated rights under § 1981, the court found that they did not have standing to sue. 586 F.Supp. at 837. However, employing the same reasoning, the court in *Clayton* found that the white plaintiff could state a claim under Title VII because she alleged violations of rights enumerated under Title VII and not simply a violation of her "right" to

---

5. Section 2000e–2(a) reads, in part:
   It shall be an unlawful employment practice for an employer...
   (2) to limit, segregate, or classify his [or her] employees or applicants for employment in any way which would deprive or tend to

deprive any individual of employment opportunities or otherwise adversely affect his [or her] status as an employee, because of such individual's race, color, religion, sex or national origin.

associate with minorities. 875 F.2d at 679–80.

■ In this case, Ms. Rupard has alleged violations of rights enumerated in § 213.065. Section 213.065 protects people from being refused "the equal use and enjoyment . . . of any place of public accommodation." Therefore, to recover on such a claim, Ms. Rupard had to allege and prove more than that she was denied her right to associate with disabled people. *Westray,* 586 F.Supp. at 837. She had to allege and prove that she was denied her right to the equal use of a public accommodation because she was accompanied by handicapped people. *Id.; Clayton,* 875 F.2d at 679. From the record in this case, we find that Ms. Rupard sustained her burden of alleging and proving that she was denied a public accommodation because she was in the company of disabled persons. The MCHR hearing officer found that Ms. Rupard was denied service at the Red Dragon Restaurant because of its discriminatory policy regarding guide dogs and because she was accompanied by handicapped persons who required guide dogs. This finding is not disputed. Because Ms. Rupard alleged, and the MCHR found, that her right to the equal use and enjoyment of public accommodations was impinged upon because of discrimination based on handicap, we find that Ms. Rupard stated a claim under § 213.065. The MCHR's finding that Red Dragon discriminated against Ms. Rupard based on handicap is affirmed.

### Damages

■ As its second point on appeal, Red Dragon argues that the MCHR erred in awarding Ms. Rupard $300.00 as actual damages for deprivation of her civil rights and $590.40 for out-of-pocket expenses. Red Dragon cites *Bass v. Nooney Co.,* 646 S.W.2d 765 (Mo. banc 1983) for the proposition that actual damages for emotional distress are available only if "the injured person's emotional distress was foreseeable; proximately caused by a tortfeasor [and] . . . sufficiently severe so as to be legally cognizable." However, *Bass* is inapplicable to the present case because *Bass* was a tort case and the present case involves the deprivation of civil rights. Although the law in Missouri regarding actual damages for emotional distress as the result of a plaintiff being deprived of his or her civil rights is sparse, we have found no case applying the tort standard for damages. However, as previously noted, federal cases addressing federal anti-discrimination statutes may be employed by this court to guide our inquiry into Missouri's civil rights statutes. *See Midstate Oil,* 679 S.W.2d at 845–46; *Wentz,* 847 S.W.2d at 879; *Laclede,* 748 S.W.2d at 393–94; *Southwestern Bell,* 699 S.W.2d at 77–78.

■ Federal cases addressing damages for emotional distress in civil rights cases clearly distinguish tort damages from civil rights damages. Under federal law, the tort standard for awarding damages for intentional infliction of emotional distress should not be applied to civil rights actions, because of the "broad remunerative purpose of the civil rights laws." *Bolden v. Southeastern Penn. Transp. Auth.,* 21 F.3d 29, 34 (3d Cir.1994). *See also Chatman v. Slagle,* 107 F.3d 380, 384–85 (6th Cir.1997); *Walz v. Town of Smithtown,* 46 F.3d 162, 170 (2d Cir.1995); *Chalmers v. City of Los Angeles,* 762 F.2d 753, 761 (9th Cir.1985). The federal courts have found " 'the interests protected by a particular constitutional right may not also be protected by an analogous branch of the common law of torts.' " *Bolden,* 21 F.3d at 35 (quoting *Carey v. Piphus,* 435 U.S. 247, 258, 98 S.Ct. 1042, 1049, 55 L.Ed.2d 252 (1978)).

■ Constitutional rights are not adequately protected by tort damages because a civil rights claim is not analogous to a tort claim for intentional infliction of emotional distress. *Id.* at 35. "[C]ivil rights claims are intended to 'compensate injuries caused by the . . . deprivation' " of a plaintiff's civil rights. *Id.* at 34 (quoting

*Memphis Community School District v. Stachura,* 477 U.S. 299, 309, 106 S.Ct. 2537, 2544, 91 L.Ed.2d 249 (1986)). Therefore, "[c]ompensatory damages [for civil rights violations] may be awarded for humiliation and emotional distress established by testimony or inferred from the circumstances." *Johnson v. Hale,* 940 F.2d 1192, 1193 (9th Cir.1991). The federal requirement that a plaintiff prove actual injury is adequate to ensure that plaintiffs are not compensated for illusory injuries. *Bolden,* 21 F.3d at 35. The severity of the harm suffered by the plaintiff due to the deprivation of his or her civil rights should not be a criteria for determining if the plaintiff is entitled to recover, but should be used to determine the amount of the damages. *Chatman,* 107 F.3d at 385.

■ Here, Red Dragon is asking that we apply the common law tort measure of damages to a civil rights claim. In light of the "broad remunerative purposes" of the MHRA and the inadequacy of the tort measure of damages, we conclude that the tort standard for actual damages for emotional distress does not apply to civil rights cases under the MHRA. Therefore, because Red Dragon does not dispute the sufficiency of the evidence or the amount of the award, the Commissioner's award of $300.00 for emotional damages due to the deprivation of Ms. Rupard's civil rights is affirmed.

■ Red Dragon also contests the MCHR's award of $590.40 to Ms. Rupard as compensation for "out-of-pocket" expenses for the days of work she missed to file and pursue her claim with the MCHR and for the days she was absent from work to attend the trial of Ms. Robin and Mr. Stephan. The MCHR did not brief this issue. Again, we have found no Missouri case law addressing whether a civil rights plaintiff is entitled to damages resulting from time absent from work for litigation or litigation related activities. However,

we find that Ms. Rupard is not entitled to compensation for these expenses.

■ The MCHR could award only damages authorized by statute because "administrative agencies have only those powers expressly conferred or reasonably implied by statute." *State ex rel. Riverside Joint Venture v. Missouri Gaming Com'n,* 969 S.W.2d 218, 220 (Mo. banc 1998). Section 213.075.8 [6] authorizes the MCHR to require violators of the MHRA "to take such affirmative action, as in the panel's judgment will implement the purpose of this chapter, including, but not limited to backpay; hiring; reinstatement or upgrading; restoration to membership in any respondent labor organization; the extension of full, equal and unsegregated housing; the extension of full, equal and unsegregated public accommodations; actual damages; and the submission of a report of the manner of compliance." There is no authorization for out-of-pocket expenses for time missed from work to prepare for and litigate a claim. So, unless Ms. Rupard's out-of-pocket expenses fall within the meaning of actual damages, she is not entitled to be compensated for them under § 213.075.8.

This court does not believe that Ms. Rupard's "out-of-pocket" expenses are encompassed within the actual damages authorized by the statute. Two Missouri cases have addressed the definition of actual damages under § 213.075.8. Although the civil rights violations in *Biggs v. Missouri Com'n on Human Rights,* 830 S.W.2d 512, 516 (Mo.App.1992) and *Joplin v. Missouri Com'n on Human Rights,* 642 S.W.2d 370, 374–75 (Mo.App.1982) involved housing discrimination, § 213.075.8 is the statutory authorization for remedies under both § 213.040, housing discrimination, and § 213.065, public accommodations.[7] *Biggs* and *Joplin* determined that actual damages include damages for deprivation of civil rights, emotional distress,

---

**6.** Section 213.075.8 is now codified at § 213.975.11, RSMo 1994.

**7.** *Joplin* interpreted § 213.120.6, RSMo 1978, which was the predecessor to § 213.075.8.

and humiliation. 830 S.W.2d at 516, 642 S.W.2d at 375. Neither case indicates that "out-of-pocket" expenses for the pursuit of litigation are actual damages, or that a plaintiff should be compensated for such expenses. No other Missouri case has extended the availability of damages to the type of expenses Ms. Rupard claims, and we decline to do so here.

However, a prevailing party may also recover "reasonable fees and expenses" incurred in a civil action or agency proceeding. Section 536.087. While Ms. Rupard's claimed "out-of-pocket" expenses could be viewed as an expense incurred in relation to a civil action or agency proceeding, we do not believe these expenses fall within the statutory definition of "reasonable fees and expenses." Section 536.085 defines "reasonable fees and expenses" as "the reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court or agency to be necessary for the preparation of the party's case, and reasonable attorney or agent fees." Ms. Rupard's claim for compensation for time lost from work as a result of the prosecution of her claim and that of her friends is not the type of claim for expenses contemplated by § 536.087.

Because Ms. Rupard's claim for out-of-pocket expenses for the days she missed work does not fall within any category of statutorily authorized damages, the MCHR's award of $590.40 for such expenses is reversed.

### Motion for Attorney's Fees on Appeal

Red Dragon filed a motion in this court requesting attorney's fees pursuant to § 213.111.2. However, § 213.111 applies to claims for attorney's fees arising out of civil rights litigation initiated in the circuit court after the plaintiff received a "right to sue" letter from the MCHR. The attorney's fees provision is applicable only to suits initiated in the circuit court and not appeals from administrative decisions.

Section 536.087.3 is the appropriate authority for requesting attorney's fees incurred while appealing the decision of an administrative agency. Section 536.087.3 states, in part:

A party seeking an award of fees and other expenses shall, within thirty days of a final disposition in an agency proceeding or final judgment in a civil action, submit to the court, agency or commission which rendered the final disposition or judgment an application which shows that the party is a prevailing party and is eligible to receive an award under this section. . . .

*See also State ex rel. Div. of Transp. v. Sure–Way Transp., Inc.,* 948 S.W.2d 651, 657–58 (Mo.App.1997). This section requires the party claiming fees and expenses to submit its application to the administrative body before which it first prevailed, within thirty days of the ruling, even if the State appeals. *Id.; Hernandez v. State Bd. of Registration for the Healing Arts,* 936 S.W.2d 894, 901–02 (Mo.App. 1997). "Even if the underlying case is appealed, the tribunal before which the fee application was properly brought will retain jurisdiction over that fee application, and the action will be held in abeyance until the adversary proceeding becomes final." *Davis v. Angoff,* 957 S.W.2d 340, 344 (Mo.App.1997).

Without addressing whether Red Dragon is a "prevailing party" under § 536.087, we find that Red Dragon is not entitled to attorney's fees. Red Dragon did not file its motion in the appropriate court and it filed its motion outside of the thirty day time period prescribed by the statute. The appropriate court to hear Red Dragon's claim for attorney's fees would have been the Circuit Court of Platte County, the forum which rendered the final judgment in favor of Red Dragon. Additionally, Red Dragon should have filed its petition for attorney's fees within thirty days of December 24, 1997, but it did not file its petition until June 17, 1998. Therefore, Red Dragon failed to comply with the fil-

ing requirements of § 536.087 and is not entitled to attorney's fees, regardless of whether it "prevailed" within the meaning of § 536.087.

## Conclusion

Because we find that the Ms. Rupard stated a claim, but the agency erred in awarding damages for out-of-pocket expenses, we remand this case to the circuit court for remand to the MCHR for entry of an amended order in favor of Ms. Rupard, but only in the amount of $300.00 to compensate her for the deprivation of her civil rights. See *Laclede*, 748 S.W.2d at 401.

All concur.