James F. **CONWAY**, Charles E. Mischeaux, Matthew J. Padberg, Anne-Marie Clarke, Freeman Bosley, Jr., Rodney A. Williams, St. Louis Board of Police Commissioners, Appellants,

v.

**MISSOURI COMMISSION ON HUMAN RIGHTS,** Respondent.

**No. ED 75509.**

Missouri Court of Appeals, Eastern District, Division Five.

Nov. 30, 1999.

Thomas J. Ray, Patricia A. Hageman, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, Reuben Shelton, Paula

Hernadez-Johnson, St. Louis, for respondent.

LAWRENCE G. CRAHAN, Judge.

The St. Louis Board of Police Commissioners ("Employer") appeals the judgment affirming a decision of the Missouri Commission on Human Rights ("Commission"). The Commission held that Employer had discriminated against Joyce Harris ("Complainant") on the basis of her race when it failed to promote her in violation of section 213.055.1(1)(a) and (b) RSMo 1994. We affirm.

■ We review the findings and conclusions of the Commission rather than the judgment of the circuit court. *Missouri Commission on Human Rights v. Red Dragon Restaurant, Inc.*, 991 S.W.2d 161, 165 (Mo.App.1999). Our review is limited to a determination of whether the decision of the Commission is supported by substantial evidence, whether the decision was arbitrary, capricious or unreasonable, or whether the administrative action constituted an abuse of discretion. *Id.* In making this determination, we construe the evidence in the light most favorable to the Commission's decision, together with all reasonable inferences therefrom. *Laclede Cab Co. v. Missouri Commission on Human Rights*, 748 S.W.2d 390, 394 (Mo.App. 1988). Further, we will defer to the Commission's determination of the credibility of witnesses. *Joplin v. Missouri Commission on Human Rights*, 642 S.W.2d 370, 372 (Mo.App.1982).

In November 1989, an opening was created in the Budget and Finance Division of the St. Louis Police Department for the position of Payroll Specialist. Joyce Harris ("Complainant"), an African American, and Ellie Downs and Ann Donaldson, both Caucasians, applied for the position. Ellie Downs was promoted and Complainant was not.

The primary function of the Payroll Specialist is to perform duties involved in preparing and balancing the department's payroll. These duties include finding discrepancies in overtime, verifying duty roster information and formulating check distribution lists. Candidates for the position were required to have a high school diploma or its equivalent. A basic course in bookkeeping was preferred but not required. The candidates also needed to have a minimum of one year of experience in payroll.

When Complainant applied for the position, she had been employed by the St. Louis Police Department for about eight years. She had worked continuously in the Budget and Finance Division for seven of the eight years as an Administrative Clerk. Her principal duties involved turning in duty rosters, which consist of the attendance, overtime and shift information for police officers and civilian employees. Complainant also handled employment verifications and subpoenas and occasionally worked with payroll. In addition, Complainant helped and trained co-workers, showing them how to work efficiently with sick time and duty rosters and how to operate the office computer system.

Complainant has a high school education and diploma. She has taken some college courses but these were not listed on her application for the position.

Jan Craig ("Supervisor") was the person who conducted the promotion process. Although Supervisor did not have the final decision, her superiors relied totally on her recommendation.

Employer has a guideline set forth in a document entitled MEMORANDUM OF UNDERSTANDING which states "where skill, ability, and qualifications are relatively equal, seniority shall prevail in the selection." Although Supervisor was familiar with the MEMORANDUM OF UNDERSTANDING booklet, she did not know how seniority affected the Payroll Specialist position. Complainant had more seniority than Ellie Downs.

Supervisor testified that Complainant and Ellie Downs had the same knowledge and experience. Complainant agreed that she was not more qualified than Ellie Downs.

Employer's position at the hearing was that its decision not to promote Complainant was based on her work record and history, primarily that she made excessive mistakes. Supervisor also claimed that she took into account overtime taken and sick time used by the candidates. Supervisor further testified that she looked for aptitude for math, typing, accuracy of work, good communications skills, grammar and writing skills. Supervisor testified that Complainant lacked these necessary skills to perform the job of payroll specialist.

For a number of reasons, the Commission found that Supervisor's testimony was not credible. For example, Supervisor claimed to have maintained a running tally of mistakes made by the various candidates on forms completed prior to 1990. However, she disposed of such records even though she knew within a short time after Ellie Downs' promotion that Complainant had filed a complaint.

Supervisor also claimed to have devoted equal time to training the applicants. However, Complainant and a former employee who was in a position to observe the amount of time spent on training both testified that Complainant and Ann Donaldson received far less training than Ellie Downs.

Supervisor claimed to have considered dependability and punctuality in making her decision. The actual records, however, showed that Complainant's record was as good or even better than Ellie Downs. Although Complainant conceded that she arrived 15–20 minutes late nearly every morning, she further testified that she arrived with Ellie Downs on numerous occasions. This testimony was not controverted.

Although many of Supervisor's claims about mistakes Complainant had made were susceptible of proof, Employer failed to produce any of Complainant's actual work product to substantiate such claims. Co-workers testified that Complainant made no more mistakes than other workers. Other inconsistencies in Supervisor's testimony were also noted.

Based on its factual findings and credibility determinations, the Commission concluded that Employer's decision not to promote Complainant was inspired by animus toward her as an African American in violation of section 213.055(1)(a) and (b) RSMo 1994. It awarded back pay of $10,672.26, an additional $1,000.00 for violation of Claimant's civil rights, $3,000.00 for humiliation and emotional distress and reinstatement in the position of Payroll Specialist with seniority as of February 1990. Employer appeals, challenging the evidentiary support for the finding of discrimination and propriety of the award of damages for emotional distress.

■■■ In analyzing a claim of discriminatory employment practices, in the absence of direct evidence of intentional discrimination Missouri courts follow the three-step burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Midstate Oil Co. Inc. v. Missouri Commission on Human Rights*, 679 S.W.2d 842, 846 (Mo.banc 1984); *H.S. v. Bd. of Regents, Southeast Missouri State University*, 967 S.W.2d 665, 670 (Mo.App.1998). Under this analysis, the plaintiff has the initial burden of proving a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. To establish a prima facie case of racial discrimination, the plaintiff must show (1) she belongs to a racial minority; (2) she applied for and was qualified for the job for which the employer was seeking applicants; (3) she was rejected; and (4) after rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications. *Id.* The burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection. *Id.* If the employer articulates a nondiscriminatory reason, the burden shifts back to the plain-

tiff to prove that the reasons offered by the employer are pretextual. *H.S.*, 967 S.W.2d at 670; *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. 1817.

■ Employer does not dispute that Complainant made a prima facie case of racial discrimination under the three-step *McDonnell Douglas* analysis. The Commission does not dispute that Employer articulated legitimate, non-discriminatory reasons for rejecting Complainant. In its first point, Employer claims that the Commission's decision is not supported by substantial and competent evidence in that there is no evidence or basis for inference that the failure to promote Complainant was based on her race. We disagree.

■ In *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993), the Supreme Court noted that, under the *McDonnell Douglas* analysis, the "factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination." Thus, rejection of the defendant's proffered reasons does permit, but does not compel, the trier of fact to infer the ultimate fact of intentional discrimination.

In this case, the Commission expressly found that Employer's testimony concerning its proffered reasons was internally inconsistent, inconsistent with undisputed facts, incredible, uncorroborated and unsupported by documentation. The disparity in pre-promotional training coupled with Employer's failure to produce documentation Supervisor claimed to have compiled were further found to give rise to a "suspicion of mendacity" on the part of Employer. Based on our careful review of the record, and with due regard to the Commission's superior opportunity to evaluate the credibility of the witnesses, we cannot say that the inferences drawn by the Commission are unsupported by substantial evidence. Point denied.

■ In its second point, Employer claims the Commission erred in awarding damages for emotional distress in the absence of medical evidence. Employer does not dispute that actual damages in civil rights cases may include damages for deprivation of civil rights, emotional distress and humiliation. *Biggs v. Missouri Commission on Human Rights*, 830 S.W.2d 512 (Mo.App.1992). However, relying upon *Bass v. Nooney Co.*, 646 S.W.2d 765, 772–73 (Mo.banc 1983), Employer urges that a plaintiff may recover damages for emotional distress only if the distress or mental injury is medically diagnosable and of sufficient severity to be medically significant. *Bass*, however, involved a negligence action and has been held inapplicable to intentional torts. *Signorino v. National Super Markets*, 782 S.W.2d 100, 104 (Mo.App.1989); *Fust v. Francois*, 913 S.W.2d 38, 48 (Mo.App. 1995). It has likewise been held inapplicable to claims for violations of the Missouri civil rights laws. *Red Dragon*, 991 S.W.2d at 170–71. Point denied.[1]

RHODES RUSSELL, C.J., Concurs.

CHARLES B. BLACKMAR, Senior Judge, Concurs.

---

1. As a practical matter, the Commission characterized the disputed award as damages for "emotional distress and humiliation." The emotional injuries cited by the Commission to support its award could readily have been characterized solely as "humiliation" which, of course, requires no medical diagnosis.