*486 Anthony Rex Gabbert, Judge,
dissenting.
I respectfully dissent. ■ The majority opinion holds that “[t]he clear meaning prohibiting discrimination based upon ‘sex’ under the Missouri Human Rights Act concerns discrimination based upon a person’s gender and has nothing to do with sexual orientation.” Thus, the majority equates “sex” with “gender.”
While there is no doubt that gender is encompassed in the meaning of sex, it does not equate to sex. “The plain meaning of words, as found in the dictionary, will be used unless the legislature provides a different definition.” Lincoln Industrial, Inc. v. Director of Revenue, 51 S.W.3d 462, 465 (Mo. banc 2001). There is no requirement, therefore, that a specific definition be given preference over another in absence of a legislative definition. Even a cursory look in a dictionary by the majority would have led them to determine that, in fact; sex does not include only gender. Indeed, Webster’s Third New International Dictionary (1993) defines sex as: (1) one of the two divisions' of human beings respectively designated male or. female; (2) the sum of the morphological, physiological, and behavioral peculiarities' of living beings that subservesbiparental reproduction; (3) the sphere of interpersonal behavior especially between male and female most directly associated with, leading up to, substituting for, or resulting from genital union; and (4) the phenomena of sexual instincts and their manifestations.[9]
I would adopt the dictionary’s definition of “sex” to be the plain meaning of sex in the Missouri Human Rights Act. As a re-suit of this plain meaning, the definition of sex has expanded the majority’s plain meaning of gender to allow for harassment or hostile workplace actions. In fact, I am not alone in recognizing this plain meaning of sex. As used in Title VII of the Civil Rights Act of 1964, “the term ‘sex’ encompasses both sex — that is the biological differences between men and women — and gender.” Complainant v. Foxx, EEOC, Appeal No. 0120133080, pg. 5, fn. 3. “As the Eleventh Circuit noted in Glenn v. Brumby, 663 F.3d 1312, 1316 (11th Cir. 2011), six members of the Supreme Court in Price Waterhouse[10] agreed that Title VII barred ‘not just discrimination because of biological sex, but also gender stereotyping — -failing to act and appear according to expectations defined by gender.’” Id. “As such, the terms ‘gender’ and ‘sex’ are often used interchangeably to describe the discrimination prohibited by Title VII.” Id.
Further, in Complainant v. Foxx, the EEOC concluded that “sexual orientation is inherently ‘a sex-based consideration,’ and an allegation of discrimination based on sexual orientation is necessarily an allegation of sex discrimination under Title VII.” Id. at 6. In that case, the Complainant worked as a temporary supervisory air traffic control specialist for the Federal Aviation Administration (FAA) in a Miami, Florida airport. Id. at 1. The FAA issued a vacancy announcement for a permanent Front Line Manager position for which Complainant was eligible and his present position automatically qualified him for consideration. Id. at 2. Complainant claimed that management knew of his desire to obtain a permanent position and *487 that he was well-qualified given his years of experience and familiarity with the Miami facility. Id. The FAA did not fill the front line position. Id. The Complainant filed a formal EEO complaint alleging that the FAA subjected him to discrimination on the bases of sex (male, sexual orientation) and reprisal for prior protected EEO activity when the FAA failed to select him for the permanent front line manager at the Miami airport. Id. at 1-2.
Unlike the EEOC’s decision, the majority dismisses, the argument that discrimination based on a person’s sexual orientation is not a protected status in the Missouri Human Rights Act by noting that if the “Missouri legislature had desired to include sexual orientation in the Missouri Human Rights Act’s protections, it could have done so.” Yet, our Missouri Supreme Court has stated that “it is speculative to infer legislative approval from legislative inaction.” Medicine Shoppe Intern., Inc. v. Director of Revenue, 156 S.W.3d 333, 334 (Mo. banc 2005). “Legislative inaction [ ] can just as well mean that the forces arrayed in favor of changing the law are matched by the forces against changing it.” Id. “In truth, the match does not have to be an even one, for the legislative purpose in our republican form of government is designed more to prevent the passage of legislation than to encourage it.” Id. Where our legislature used the broad term “sex,” and that term has been defined in many realms and most recently by the EEOC to include sexual orientation, I prefer to believe that if one is looking to the legislature for guidance, the legislature’s failure to exclude sexual orientation is more telling than its failure to act to include. The majority’s analysis suggests that a narrow, letter of the law interpretation must always be used in cases involving the Missouri Human Rights Act. However, this has historically not been the case as the Missouri Human Rights Act is a remedial statute.
In Missouri Commission on Human Rights v. Red Dragon Restaurant, 991 S.W.2d 161 (Mo.App. 1999), a restaurant refused entrance to a patron and her companions who were accompanied by guide dogs to aid their mobility. Id. at 164-65. The patron filed a timely complaint with the Missouri Commission on Human Rights alleging associational-discrimination under the Missouri Human Rights Act. Id. at 165. The Commission found for the patron, and the restaurant appealed to the circuit court. The circuit court reversed the Commission’s finding of associational discrimination on the basis that the legislative amendment to the controlling statute was not to be applied retroactively. Id. The Commission appealed to this court. Id. At the time of the incident, there was no case law in Missouri addressing whether associational discrimination was a cause of action under the Missouri Human Rights Act. Id. at 166. However, after the incident, the Missouri legislature added associational discrimination to the Missouri Human Rights Act. Id. Nevertheless, this Court reasoned that the legislature amended the Missouri Human Rights Act to clarify that associational discrimination is a covered form of discrimination. Id. (emphasis added). Thus, if following the reasoning in Red Dragon, action on the part of the Missouri legislature to add sexual orientation would only clarify that discrimination based on sexual orientation (or in this case-preference) is discrimination based on sex.
Furthermore, when determining legislative intent, the Red Dragon court stated that “this court must bear in mind that ‘[remedial statutes [like the Missouri Human Rights Act] should be construed liberally to include those cases which are within the spirit of the law and all reason *488 able doubts should be construed in favor of applicability to the case.’ ” Id. at 166-67 (quoting State ex rel. Ford v. Wenskay, 824 S.W.2d 99, 100 (Mo.App. 1992)(empha-sis added)). Consequently, I would find that Pittman did state a claim upon which relief could be granted. When analyzing a Motion to Dismiss, “[t]he pleadings are liberally construed and all alleged facts are accepted as true and construed in a light most favorable to the pleader.” Hedrick v. Jay Wolfe Imports I, LLC, 404 S.W.3d 454, 457 (Mo. banc 2013). “If the petition sets forth any facts that, if proven, would entitle the plaintiffs to relief, then the petition states a claim.” Id. The circuit court concluded that Count I of Pittman’s petition alleging Sexual Discrimination/Harassinent failed to state a claim because “he did not allege discrimination on the basis of ‘sex’ — the fact he was a man, being treated different than a woman. Rather, he alleged he was discriminated against because he was a homosexual.” I disagree. While Pittman did allege that he was discriminated against because of his sexual orientation, he also alleged that “Defendant treated Plaintiff more harshly than a male who was getting a divorce from his female wife.” In so alleging, he articulated that gender bias was associated with his claims. I find this sufficient to state a claim in light of our obligation to liberally construe the pleadings and the fact that jurisprudence in this area reveals that while straightforward gender bias allegations may meet the pleading requirements to state a claim for sexual harassment, in reality they are often illusory upon examination of the facts upon which they are based.
In Gilliland v. Missouri Athletic Club, Gilliland alleged that he, a male employee, was ■ subjected to inappropriate - sexual touching and harassment by a male manager where Gilliland was employed. 273 S.W.3d 516 (Mo. banc 2009). Gilliland ultimately quit his employment due to the alleged conditions. Gilliland also alleged that this manager inappropriately sexually touched and harassed several female employees. Id. Our Supreme Court stated: “The Missouri Human Rights Act, like Title VII, prohibits sexual harassment regardless of the sex of the claimant or the harasser. In other words, the human rights act protects individuals against sexual harassment, a form of sex discrimination, by members of either the same or the opposite sex.” Id. at 521 n. 8. There was no mention of the fact that Gilliland’s allegations, in essence, pled that males and females alike were being mistreated by the employer and that technically Gilliland’s allegations would not have met the pleading requirements for his workplace sexual harassment claim! To be fair, this issue was not before the court. Nevertheless, I think it is worthy to note that the jury in Gilliland found in favor of Gilliland on a constructive discharge claim that was not submitted under the human rights act, but in favor of the employer on all claims made under the human fights act. Although we have no way of knowing why, I believe that Gilliland is instructive in cases such as this to remind us that, ultimately, it is within the jury’s province to assess the facts of the case’ and determine whether the facts fall within the elements of the alleged tort. It 'is within our province to liberally construe the pleadings and assess whether any of the allegations might entitle the plaintiff to relief.
The illusory nature of gender specific allegations is also found in our jurisprudence regarding student-on-student sexual harassment in the public school setting. In Doe ex rel. Subia v. Kansas City, Missouri School Dist, this court applied the standard for co-worker sexual harassment claims to thfe public school setting, and found Doe’s allegations sufficient to .state a *489 cause of action. Doe had alleged, in part, that he was sexually harassed and assaulted by another male student, in the boys’ restroom and that the harassment occurred on the basis of his gender. 372 S.W.3d 43, 55 (Mo.App. 2012). Yet, while the pleadings allege that the harassment occurred because of the child’s gender, there is nothing in the facts of the case that suggest that it was the child’s sex that prompted the other child to harass and assault him.
Given the fact that the Missouri Human Rights Act is a remedial statute to be construed liberally to include those cases within the spirit of the law with all reasonable doubts to be construed in favor of applicability to the case, I would find that Pittman stated a claim under the Missouri Human Rights Act and leave it for a jury to decide whether Pittman can prove the elements necessary to prevail on his claim of sexual harassment.
I would further find that, not only did Pittman’s petition state a claim by his reference to gender bias; but that, under the spirit of the law, allegations of discrimination based upon a person’s sexual orientation (or preference) and gender stereotype also state claims as they are encompassed by the term “sex” in the Missouri Human Rights Act. As the EEOC decision stated, “sexual orientation is inherently a ‘sex-based consideration’” because when an employer takes a person’s sexual orientation into account the employer necessarily considers a person’s sex. Complainant v. Foxx at 6. In other words, a person’s sex is always considered when taking a person’s sexual orientation into account. (E.g., homosexual, heterosexual). Thus, under the spirit of the law, sexual discrimination claims based on sexual orientation are actionable claims under the Missouri Human Rights Act.
•Therefore, by the plain language and spirit of the^ law of - the Missouri Human Rights Act, I would find that Pittman’s petition states an actionable claim of sexual discrimination under the Missouri , Human Rights Act.

. The American Psychological Association also recognizes a difference between sex and gender. See Definition of Terms: Sex, Gender,' Gender Identity, Sexual Orientation, found at www.apa.org/pi/lgbt/resources/sexuality-definitions.pdf.

. Price Waterhouse v. Hopkins, 490 U.S. 228, 239, 241-42, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). , .